699 So.2d 497 (1997)
Raymond HEBARD
v.
Michael DILLON, Regional Transit Authority, Joseph Pitman and ABC Insurance Company.
No. 97-CA-0221.
Court of Appeal of Louisiana, Fourth Circuit.
September 3, 1997.
*498 Craig J. Hattier, Covington, for appellant.
Nat G. Kiefer, Jr., Kiefer & Kiefer, Metairie, for appellees.
LOBRANO, Judge.
The sole issue in this appeal is whether the provisions of La.R.S. 22:1220 apply to a party who qualifies as a self-insurer pursuant to La.R.S. 32:1042. The trial judge held that it did not and we agree.
Plaintiff sued the Regional Transit Authority (RTA) for personal injuries he allegedly received in an accident involving an RTA bus in which he was a passenger. Plaintiff alleges that on August 8, 1996 he entered into a written settlement agreement with RTA, but did not receive the settlement check until on or about September 16, 1996. Prior to receiving the check, plaintiff, on September 11th, filed a motion to enforce the settlement and for penalties and damages pursuant to La.R.S. 22:1220. The pertinent portions of that statute provide:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * * * * *
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
* * * * * *
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be sued by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
After hearing the motion, the trial judge concluded that since plaintiff had received the settlement funds, his motion to enforce the settlement was moot. The court also held that because RTA is self-insured, it is not an insurer under La.R.S. 22:1220. Plaintiff perfects this appeal.
Plaintiff directs our attention to the wording of the statute, particularly the first line of section (A) which begins: "An insurer, including but not limited to a foreign line and surplus line insurer...." He emphasizes the number of times the word "insurer" is utilized in the statute, as well as the "but not limited to" terminology of the first sentence. Plaintiff also references the provisions of the Motor Vehicle Safety Responsibility Law (MVSRL) which permit self insurance as satisfactory proof of financial responsibility. Specifically he argues that because a self *499 insurer must agree that he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay, the self-insurer is also an "insurer" for purposes of the penalty provisions of R.S. 22:1220. We disagree.
Resolving the issue in this case involves statutory construction and interpretation. In Theriot v. Midland Risk Insurance Company, 95-2895 (La. 5/20/97), 694 So.2d 184, the court was called upon to decide whether only the insured could utilize the provisions of La.R.S. 22:1220, or whether it also benefitted third party claimants. In resolving the issue[1] the court set forth the following general rules of statutory interpretation:
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Touchard v. Williams, 617 So.2d 885 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Touchard, 617 So.2d at 888. Ambiguous text is to be interpreted according to the generally prevailing meaning of the words employed. La.Civ.Code art. 11. Their meaning may be sought by consulting other laws on the same subject matter. Succession of Baker, 129 La. 74, 55 So. 714 (1911). Where a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject. Thibaut v. Board of Com'rs of Lafourche Basin Levee Dist., 153 La. 501, 96 So. 47 (1923).
We have long held that the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Garrett v. Seventh Ward General Hosp., 95-0017 (La. 9/22/95), 660 So.2d 841; Touchard, 617 So.2d at 888. Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute. State v. Piazza, 596 So.2d 817 (La.1992).
With respect to penal statutes the court observed:
We have generally held that statutes subjecting insurers to penalties are to be considered penal in nature and should be strictly construed. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). We have also recognized that laws in derogation of established rights and principles are to be strictly construed. Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least rather than the most change in the existing body of the law. Touchard, 617 So.2d at 892. Moreover, the time honored maxim, expressio nunius et exclusio alterius, is yet another helpful guide. It teaches us that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional. State v. Louisiana Riverboat Gaming Com'n., 94-1872, 1914 (La. 5/22/95), 655 So.2d 292.
With these principles in mind, we now turn to the specific issue before us.
It is undisputed that RTA is a self-insurer. That is, it has satisfied the obligations of the MVSRL by obtaining a certificate of self-insurance in accordance with La.R.S. 32:1042.[2] "It is important to understand that self-insurance is, in actuality, not insurance at all. It is merely one of the four methods by which an owner of a motor vehicle is allowed to meet the requirements of the [MVSRL]." Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). In Aisole v. Dean, 574 *500 So.2d 1248, 1251 (La.1991), the court held that "those who choose to satisfy the [MVSRL] by obtaining a self-insurance certificate do not have to provide omnibus coverage." And, in Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writ den. 409 So.2d 654, the court concluded that a self-insurer does not automatically afford uninsured motorist coverage simply because it is a qualified self-insured.
The statute before us (La. R.S. 22:1220) is penal in nature and appears in the Insurance Code. As interpreted by the Supreme Court in Theriot v. Midland Risk Insurance Company, supra, it provides for penalties and damages in favor of third party claimants (as well as insureds) for commission, by an insurer, of any one of the four acts enumerated in Section B. The statute was enacted during the 1990 legislative session, the same session in which two other comparable penal statutes in the Insurance Code were amended. A comparison with those statutes provides guidance.
La. R.S. 22:657 provides for penalties and attorney fees against health and accident insurers who fail to comply with its provisions. Section C specifically provides that the statute is applicable to "[a]ny person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer...." (emphasis added). R.S. 22:658 is applicable to "all insurers issuing any type of contract [other than life insurers and health insurers]", who fail to comply with its provisions. However, unlike R.S. 22:657 but similar to the statute at issue in this case, R.S. 22:658 does not mention or specifically include self-insurers within its provisions. We also note that the Insurance Code regulates only those self-insurers who provide health care or payment for health care services. La. R.S. 22:3001, et seq.
Considering these factors, we are satisfied that R.S. 22:1220 does not apply to the RTA. RTA's status as a self-insured is determined by the applicable provisions of the MVSRL, not the Insurance Code. The courts have consistently concluded that a self-insurer does not provide insurance, and is not subject to the compulsory omnibus and UM statutes that are otherwise applicable to true insurers. Only R.S. 22:657 specifically includes a self-insurer within its provisions. That is understandable because the only self-insurers regulated by the Insurance Code are those providing health and health care services. Certainly, when R.S. 22:1220 was enacted in 1990, the legislature was aware that R.S. 22:657 specifically included health self-insurers, and R.S. 22:658 did not. If legislative intent was to include self-insurers within the scope of R.S. 22:1220, it certainly could have been accomplished by specific inclusion at that time.
Simply put, we hold that regulation by way of the Insurance Code of those who qualify as self-insurers under the MVSRL was never intended by the legislature. Despite plaintiff's reference to a self-insurer's obligation to pay the same judgments an insurer would have to pay under its liability policy, that obligation appears in the MVSRL and not in the Insurance Code. Furthermore, the MVSRL equates the self-insurer's obligation with the insurer's obligation under a liability policy, not with the insurer's obligation under the penal statutes of the Insurance Code.
For the above and foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
PLOTKIN, J., dissents with written reasons.
PLOTKIN, Judge, dissenting:
I respectfully dissent from the majority's conclusion that LSA-R.S. 22:1220, which imposes a duty of good faith and fair dealing on an insurer flowing to its insureds and/or its claimants, does not apply to self-insurers. This important issue has not been resolved by any Louisiana appellate court. For the following reasons, the same obligations imposed by Louisiana law on insurers should be imposed on self-insurers.
The expressed public policy of the State of Louisiana is that tort victims be fully compensated for their losses. See Picone v. Lyons, 601 So.2d 1375, 1377 (La.1992). The legislature, in adopting LSA-R.S. 22:1220, *501 also proclaimed a public policy prohibiting unfair settlement behavior by insurers. Under the statute, an insurer's failure to comply with the five specific duties listed in subsection (B), which is exclusive, creates a right of action for damages and penalties in favor of third-party claimants, as well as insureds. The statute expressly refers to "insurers"; it is silent concerning the duties imposed on self-insurers. The Louisiana Supreme Court reaffirmed this public policy in Theriot v. Midland Risk Insurance Co., 95-2895 (La. 5/20/97), 694 So.2d 184 (on rehearing), in which the court held that LSA-R.S. 22:1220 imposes affirmative duties on insurers to adjust claims fairly and promptly and to make reasonable efforts to settle with insureds or/ and claimants. Moreover, the court held in Theriot that an insurer has a duty under LSA-R.S. 22:1220(B)(2) to pay a settlement within 30 days of written agreement. Thus, both the Louisiana Legislature and the Louisiana Supreme Court have recognized a private action against an insurer by an insured and/or claimant for various unfair settlement practices.
In Louisiana, all motorists, both owners and drivers of vehicles, are required either to possess automobile liability insurance or to qualify as self-insurers under the provisions of the Motor Vehicle Safety Responsibility Law, LSA-R.S. 32:1042. Thus, Louisiana residents, governmental entities, and businesses who qualify as self-insurers have the right to choose whether to purchase insurance or, alternatively, to comply with the requirements of LSA-R.S. 32:1042.
When a person enters an insurance contract, the insurer provides protection against financial loss for profit. An insurance company is a legal entity which combines premiums paid by two or more persons or firms through actual or promised contributions to a fund, out of which claimants are paid their losses. By virtue of an insurance contract, the risk of loss is transferred from the insured to the insurer. Under the terms of the contract, the insurer is bound to compensate the insured and claimant for losses covered by the insurance policy, as it is interpreted by statutes and jurisprudence. Thus, an insurance company is a professional risk bearer. Society benefits because claimants are restored to production, tax revenues are increased, and welfare benefits are reduced. From the perspective of the insured, the risk, uncertainty, and fear of insolvency are reduced or alleviated. The purchase of insurance transfers the risk of loss to the insurer, who then becomes obligated to deal fairly and in good faith with the claimant.
Self-insurers are those persons, governmental entities, or businesses that retain the risk of their own loss. The defendant in this case, Regional Transit Authority, is a self-insurer. The decision to become a self-insurer is a conscious business decision. In electing this form of responsibility, the self-insurer elects, not to transfer potential losses to an insurance company, but to retain the risk of loss. Recognized factors favoring a business decision selecting retention include the following: (1) expensesthe potential savings flowing from direct payment of losses as opposed to payment of insurance premiums; (2) transaction coststhe expectation that losses will be less than those assumed by the insurer in calculating the premiums, thereby resulting in a savings of the difference between two expected loss estimates; (3) opportunity coststhe potential that the risk will be low and that the self-insurer will be able to predict losses with acceptable accuracy, thus effectively investing the unused funds in alternative investments; (4) quality of servicesthe belief that the self-insurer can better perform internally many or all of the services of an insurer; and (5) tax benefitsthe conviction that the consequences of self-insurance outweigh the costs of insurance premiums. Thus, entities choose self-insurance based on business preferences, deliberately electing the retention of risk.
To qualify for a certificate of self-insurance under Louisiana law, an applicant must meet two requirements: (1) have more than 25 motor vehicles registered in his name, and (2) have assessed in his name property valued at $100,000 or more after deduction of encumbrances from the assessed value. LSA-R.S. 32:1042(A). Logically, only businesses and governmental entities can meet these requirements. Businesses and governmental entities which do meet these requirements *502 are allowed to obtain certificates of self-insurance for a nominal $100 fee, thereby effecting enormous monetary savings in lieu of purchasing motor vehicle liability insurance. The certificate attests to the satisfaction of the assistant secretary of the Office of Motor Vehicles that the self-insurer "is possessed and will continue to be possessed of ability to pay judgments." LSA-R.S. 32:1042(B)(1).
Self-insurance is not, by definition, insurance, because no transfer of risk to a third party occurs. Self-insureds are not required to escrow or reserve funds to protect against future losses; the only legal requirement imposed on self-insurers is that they pay losses when they occur. The only penalty for non-payment is the loss of self-insured status; the insurance commissioner may suspend or cancel a certificate of self-insurance upon receipt of notice that the self-insured has failed to pay a judgment within 60 days of the date the judgment becomes final. LSA-R.S. 32:1042(C).
Self-insurers receive tremendous and unique economic advantages under Louisiana law as compared to insurance companies. Not only are self-insurers relieved of the burden of paying any insurance payments on at least 25 motor vehicles, but they are not required by law to provide either uninsured motorist coverage or omnibus coverage. Moreover, self-insurers are not subject to any of the penalty or attorney fee provisions which arise when courts find that insurers have acted arbitrarily and capriciously. All of these factors result in tremendous profits for the self-insurer. Moreover, claimants are disadvantaged by the fact that such requirements are not imposed on self-insurers, as well as by the fact that many other requirements imposed on insurance companies which trigger liability to third parties are not imposed on self-insurers.
In addition to the fact that entities are allowed to gain tremendous monetary advantages from electing self-insurance over regular insurance, self-insurers gain non-monetary benefits. For example, self-insurers are subject to virtually no governmental regulation or supervision, while insurance companies are closely regulated by the Louisiana Department of Insurance. Thus, a self-insurer, which operates like an insurance company, does not answer to any governmental agency. The only regulation of self-insurers is found in LSA-R.S. 32:1042(C), which gives the Insurance Commissioner authority to suspend or cancel a certificate of self-insurance only under very limited circumstances. Again, the lack of regulation disadvantages claimants dealing with self-insurers who have legitimate claims for which they are entitled to prompt, legitimate coverage.
Despite all of these monetary and non-monetary benefits flowing to self-insurers, like an insurer, a self-insurer is a risk bearer. In order to qualify as a self-insurer, the entity must have the claims experience and financial resources to manage and satisfy potential losses. The self-insurer behaves like an insurance company when it deals with a claimant. From the perspective of an injured party, it makes no difference whether the tortfeasor is technically covered by an insurance company or not. Both insurers and self-insurers secure claims information, and settle or litigate the demands of the injured party. Both have the same economic incentives, profit motives, and claims policies when dealing with a claimant because each is obligated to bear the risk of loss arising out of a motor vehicle accident. When a self-insurer behaves like an insurance company that is, when it is dealing with claimantsit should be subject to the same obligations as an insurance company.
No valid legal, social, or economic reasons for applying one rule to an insurer and a different rule to a self-insurer who is dealing with a claimant exists. The majority cites no policy reason justifying a rule requiring insurers to adjust claims fairly concerning issues limited to the statutory list established by LSA-R.S. 22:1220(B), but relieving self-insurers from the same obligations, effectively imposing no duty on self-insurers to adjust claims fairly. The public policy behind LSA-R.S. 22:1220 is to motivate insurers to behave reasonably when dealing with claimants.
The damage and penalty provisions imposed by LSA-R.S. 22:1220 are intended to serve as an economic deterrence for the purpose of modifying behavior in adjusting tort *503 claims. The purpose is to provide a legal and economic incentive to all insurers and self-insurers against unfair settlement practices when dealing with claimants. Business and governmental entities will invest in compliance to avoid the additional potential liability. The majority's holding undermines that policy and permits self-insurers to avoid basic responsibilities and duties imposed on insurers as a matter of law. Self-insurers will continue to delay timely payment and settlement of claims; this behavior does not protect the public policy reflected by LSA-R.S. 22:1220. If the defendant is not subject to the requirements of LSA-R.S. 22:1220, great potential for public harm exists; self-insurers will treat claimants unfairly as part of their general claims practices.
Another reason against having separate penalty rules for insurers and self-insurers dealing with claimants is the potential violation of the constitutional concepts of equal protection and fundamental fairness. All persons in the same class, including insurers and self-insurers, should have similar legal obligations under similar circumstances. Separate rules create confusion, uncertainty, and instability.
LSA-R.S. 22:1220 expressly refers only to "insurers." As mentioned previously, the reasons for implementing the public policy expressed by the provision was to motivate insurance companies to settle claims fairly or pay damages for its failure to do so. If the legislature intended to exclude self-insurers from the requirements of the statute, it could have done so. The failure to expressly include self-insurers creates a gap in the statute that the court may supply under the doctrines governing statutory interpretation. In fact, the statute expressly applies to "[a]n insurer, including but not limited to, a foreign insurer and surplus line insurer." I interpret this language to mean that the legislature intended to include all types of risk bearers, including self-insurers. When large corporations and governmental entities insure themselves, no loophole in the law that permits avoidance of general duties to protect the public should exist.
Moreover, neither the fact that Louisiana courts have held that a business or entity possessing a certificate of self-insurance is not "in actuality" an insurer, nor the fact that Louisiana courts have held that self-insurers are not required to provide either omnibus coverage or uninsured motorist coverage, as do regular insurers, is dispositive of the issue raised by this case. Both uninsured motorist coverage and omnibus coverage are provided by insurers as part of a total coverage package, which the parties negotiate and for which the insured party pays premiums. Both omnibus and uninsured motorist coverage are designed to provide greater protection for an insured. Omnibus coverage provides protection when the insured permits someone else to drive the vehicle. Uninsured motorist coverage protects the insured if he is damaged by a tortfeasor who is either uninsured or underinsured. Both of these types of coverage are provided through policy provisions; they directly benefit an insured within the insurer/insured relationship.
The situation is different with a self-insured. Concerning omnibus coverage, a self-insured generally provides the exact same kind of coverage as would be provided by self-insurers under the provisions of La.C.C. art. 2320, which makes an employer responsible for motor vehicle torts committed by his employees and others. Concerning uninsured motorist coverage, which is optional in Louisiana since insureds may elect to reject, one of the reasons for choosing self-insurance is to avoid paying the premiums for uninsured motorist protection. The fact that an entity which chooses to become self-insured is not obligated to provide uninsured motorist coverage is part of the total business decision. The fact that self-insurers are not required by Louisiana law to provide either omnibus coverage or uninsured motorist coverage is irrelevant to the issue presented by this case.
The duty to fairly handle claims in good faith imposed by LSA-R.S. 22:1220 is easily distinguishable from the duties to provide omnibus coverage and underinsured motorist coverage. That duty is not negotiated, neither does an insured party pay premiums for the performance of that duty. Moreover, the duty to handle claims fairly does not enter into the business decision of whether to *504 become a self-insured. The duties imposed by the statute at issue are designed to prevent unfair actions on the part of entities who legally owe claims. The majority's reliance on the fact that self-insurers are not required to provide either uninsured motorist coverage or omnibus coverage is therefore misplaced.
In this case, Regional Transit Authority admitted its failure to transmit the settlement proceeds within 30 days after the settlement agreement was reduced to writing, as required by LSA-R.S. 22:1220. Accordingly, I would vacate, reverse the trial court on the issue of LSA-R.S. 22:1220 penalties, and remand for a hearing on penalties.
NOTES
[1] The court concluded that the statute created a cause of action for third party claimants, as well as insureds, for the four specific acts set out in section B.
[2] La.R.S. 32:897 provides four alternative methods, besides obtaining liability insurance, for satisfying the financial responsibility laws of this state. Section 4, applicable in this case, provides that proof may be given by filing:

(4) A certificate of self-insurance, as provided in R.S. 32:1042, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had been issued such a policy to said self-insurer.