873 So.2d 934 (2004)
Amber C. RAWLS and Steven R. Rawls, Plaintiffs-Appellees,
v.
CITY OF BASTROP, Louisiana, Defendant-Appellant.
No. 38,449-CA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
Rehearing Denied June 17, 2004.
*935 Dawn Hendrix Mims, for Appellant.
Rankin, Yeldell & Katz by: Stephen J. Katz, for Appellees.
Before STEWART, GASKINS and DREW, JJ.
DREW, J.
In this property damage case, the plaintiffs, Amber and Steven Rawls, filed suit against the City of Bastrop, alleging their vehicle was damaged by paint overspray from the negligent painting of a municipal building. The trial court found the City liable and awarded damages, penalties, and attorney fees. On appeal, the City argues that the trial court erred by awarding inappropriate damages, and in awarding penalties and attorney fees. For the following reasons, we affirm the damage award, but reverse the award of penalties and attorney fees.

FACTS
In April 2002, the plaintiffs' black Mitsubishi Montero accidentally received specks of white paint overspray while parked in a City of Bastrop parking lot. The overspray came from a City employee who was painting a building. As a result, Mrs. Rawls testified that the City requested the *936 Montero be taken to Detail Masters to try to remove the overspray, but that Detail Masters "just couldn't get most of it off." Subsequently, the plaintiffs obtained four estimates for repainting their vehicle, one from Hopkins Chevrolet, one from Ruston Ford, one from Casey Marus Body Shop, and one from Ryan Chevrolet. The City then asked the plaintiffs to take the vehicle back to Ryan Chevrolet, where James Spires, the assistant body shop manager for Ryan Chevrolet, applied lacquer thinner to a spot on the right fender of the vehicle in an attempt to remove the white paint. At trial, Spires testified that the vehicle had two coats of painta base coat and a clear coat. Spires testified that the overspray did not penetrate the clear coat. When asked if applying the lacquer thinner to the fender and then polishing it removed the overspray, he stated: "As far as I know it did. I mean I think it did." However, Mrs. Rawls testified that the white paint was still on the vehicle. Furthermore, the parties stipulated at trial that if Mr. Rawls was called, his testimony on the facts would essentially be the same as Mrs. Rawls' testimony. The parties also stipulated that the City and its self-insured fund made no tender of any amount of money to the Rawlses subsequent to the accident.
The testimony of Casey Marus, the owner and operator of Casey Marus Body Shop, also conflicted with that of Mr. Spires. Mr. Marus testified that he attempted to remove the white specks of paint from the Montero using both a fast-evaporating lacquer thinner, as well as a wax and grease remover that evaporated more slowly. However, these chemicals did not remove the spots. He then tried a "heavy duty compound" that removed a few specks, but Mr. Marus concluded that it would take a lot of machine compounding to remove more than a few specks, and, even then, the compounding might not remove all of the overspray. Additionally, he stated that heavy machine compounding would cut down on the clear coat on the vehicle which would leave it without a lot of ultraviolet protection. Mr. Marus had made an initial estimate of $2,895.50 for repainting the vehicle, and at trial he testified that although the cost of materials had subsequently increased, the additional cost at the time of trial would not be over $100 to $150 more. The time for repairs would be five to six working days if nothing went wrong during the process.
On cross-examination, Mr. Marus was asked if he checked the Montero to see if the white paint had penetrated the clear coat to the black paint. Mr. Marus indicated that it had been "some time ago" that he had looked at the vehicle, and that he could not remember.
In addition to Mrs. Rawls, Mr. Marus, and Mr. Spires, the only other witness to testify was Bob Chandler, who was retained by Risk Management, Inc., to investigate and assist in the adjusting of the plaintiffs' vehicle on behalf of the City. Essentially, Mr. Chandler testified that he sent the plaintiffs to Ryan Chevrolet to see if the vehicle could be cleaned, and that after they took the vehicle to Ryan Chevrolet, Mrs. Rawls called him and told him that they wanted to have the vehicle painted. Chandler indicated that Ryan Chevrolet would charge a little over $600 to clean the vehicle, and it was his position that the cleaning would take care of the problem. When asked why he did not tender that amount to the plaintiffs, he indicated that Mrs. Rawls had made it clear that she would not accept it. Chandler also indicated that he made no unconditional tender to Mrs. Rawls in any amount.
After hearing the testimony of the witnesses, as well as receiving documentary evidence including photographs of the vehicle *937 and various estimates, the trial court stated that it was clear the City was liable for the damage done to the vehicle. The court stated that it found the testimony of Mr. Marus to be most credible. The court also indicated that it did not find Mr. Spires' testimony concerning removal of the spots to be credible. Accordingly, the court awarded damages in the amount of Mr. Marus' estimate of $2,895.53, plus an additional $150 to cover the increased costs of materials. The court also awarded $500 for the plaintiffs' inconvenience, which the court indicated would likely include the future inconvenience of being without their vehicle for several days during repainting. Finally, the court awarded penalties in the amount of $500 and attorney fees in the amount of $1,000. In this regard, the court stated that it saw no reason to make a distinction between the City, which is self-insured, and any other company. The court stated:
The obligation still arises to adjust these things fairly and in a timely manner and it's clear [the Rawlses] repeatedly gave a number of estimates and tried to work this thing out to no resolution.
Finally, the court awarded Mr. Marus an expert witness fee in the amount of $52.50.

DISCUSSION
The City's first issue on appeal concerns whether the damages awarded by the trial court are appropriate. It is correctly noted by the City that the primary objective in a case involving property damage is to restore the property, as nearly as possible, to its state immediately preceding the damage. The City argues that the overspray could have been repaired by cleaning and waxing the Montero, as offered by the City.
An appellate court cannot disturb the factual findings of the trial court in the absence of manifest error; when testimony on an issue conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Hope v. City of Shreveport, 37,759 (La.App.2d Cir.12/17/03), 862 So.2d 1139. In this matter, there is no manifest error in the trial court's factual findings, and the trial court's evaluations of credibility will not be disturbed.
The City's second issue on appeal is whether the trial court erroneously awarded penalties and attorney fees. On this issue, the City argues that it is a member of the Louisiana Municipal Association Risk Management Agency ("LMARMA") and part of a self-insurance fund. The City further argues that there is a distinct difference between a regular insurance company and the LMARMA. In support of this argument, the City cites the provisions of La. R.S. 33:1345, which state in pertinent part that an interlocal risk management agency is not an insurance company or an insurer under the laws of Louisiana, and that the development and administration by such agency of one or more group self-insurance funds shall not constitute doing insurance business.
In opposition to this argument, the plaintiffs assert that the record in this matter does not reflect that the City is anything other than a self-insured entity. They also argue that the trial court did not indicate that the City was an insurance company, but that the court simply likened the City to any other self-insured company, and that because of the untimely manner in which the City satisfied its liability in this case, the court concluded it was appropriate to sanction the City as though it were an insurance company. In this regard, the plaintiffs argue that the duties of good faith and fair dealing incumbent upon insurers pursuant to the provisions of La. R.S. 22:658 and 22:1220 should also apply to self-insurers. In support of this *938 position, the plaintiffs cite the dissenting opinion in Hebard v. Dillon, 97-0221 (La. App. 4th Cir.9/3/97), 699 So.2d 497. The author of the dissenting opinion found no valid legal, social, or economic reasons for applying one rule to an insurer and a different rule to a self-insurer dealing with a claimant. The dissenting judge stated that the damage and penalty provisions imposed by La. R.S. 22:1220 are intended to serve as an economic deterrent for the purpose of modifying behavior in adjusting tort claims. The purpose was to provide a legal and economic incentive to all insurers and self-insurers against unfair settlement practices when dealing with claimants. Additionally, the dissenting judge saw potential violations of the constitutional concepts of equal protection and fundamental fairness in having separate penalty rules for insurers and self-insurers dealing with claimants. Thus, he interpreted the statutory provisions to mean that the legislature intended to include all types of risk bearers, including self-insurers, under the provisions of La. R.S. 22:1220.
At the outset, we note that the plaintiffs are correct in stating that the record before us does not indicate that the City is a member of LMARMA, but simply that the City is self-insured. Nevertheless, after reviewing the statutory provisions at issue, we agree with the majority opinion in Hebard, supra, and not with the dissenting opinion.
The provisions of La. R.S. 22:1220 state in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

* * *
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
The above-quoted provisions are found in Part 26 of Chapter 1 of the Louisiana Insurance Code. Part 26, entitled "Unfair Trade Practices," is designed to regulate the trade practices in the business of insurance, in accordance with federal law, by defining or providing for the determination of all acts, methods, and practices which constitute unfair methods of competition and unfair or deceptive acts and practices in this state, and to prohibit the same. La. R.S. 22:1211. Part 26 defines "insurer" to mean:
... any person, reciprocal exchange, interinsurer, Lloyds insurer, fraternal benefit society, industrial and burial insurer, or any insurer that markets under the Home Service Marketing distribution method and issues a majority of its policies on a weekly or monthly basis, or any other legal entity engaged in the business of insurance, including insurance agents, insurance brokers, surplus lines brokers, and insurance solicitors. Insurer shall also mean medical service plans, hospital service plans, health maintenance organizations, and prepaid limited health care service plans. For purposes of this Part, these foregoing *939 entities shall be deemed to be engaged in the business of insurance.
La. R.S. 22:1212(C).
As we held in Block v. St. Paul Fire & Marine Ins. Co., 32,306 (La.App.2d Cir.9/22/99), 742 So.2d 746, statutes requiring timely payment of claims and imposing a duty of good faith and fair dealing are penal in nature and, therefore, must be strictly construed. Even without the definition of "insurer" quoted above, a strict interpretation of the word "insurer" would not include the City in the instant case. The City did not insure the plaintiffs, and does not insure any tort claimant on a claim against the City. Furthermore, the above-quoted definition of "insurer" plainly shows that the legislature intended to include only those entities engaged in the business of insurance; the City is not in the insurance business. Accordingly, the City is not an "insurer" for purposes of La. R.S. 22:1220.
Because the penal provisions of this statute must be strictly construed, they cannot be applied by analogy to the City when the City does not fall within the plain reading of the words of the statute. Thibodeaux v. Stapp Towing Co., 96-1514 (La. App. 3d Cir.8/27/97), 702 So.2d 693. Moreover, because the City is not an insurer, we also find inapplicable the penalty and attorney fee provisions of La. R.S. 22:658. Finally, we note that the question of whether or not self-insured governmental entities should be subject to penalties with respect to settling claims is a question that addresses itself to the legislature, not the judiciary.

CONCLUSION
For the reasons set forth above, that portion of the trial court's judgment assessing damages is hereby affirmed, but that portion of the trial court's judgment assessing penalties and attorney fees is hereby reversed. Each party is to bear its own costs.

DECREE
The judgment is AFFIRMED in part and REVERSED in part.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, PEATROSS, DREW and LOLLEY, JJ.
Rehearing denied.