## Susan Morrison vs. Toys "R" Us, Inc., Massachusetts.

Plymouth. March 1, 2004. - April 15, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Consumer Protection Act,* Availability of remedy, Insurance, Offer of settlement, Unfair act or practice, Trade or commerce. *Statute,* Construction.

This court concluded that no independent right of action existed under G. L. c. 93A, § 9, for unfair or deceptive claims settlement practices by a self-insuring corporate entity engaged in a trade or a business; therefore, a judge in the Superior Court properly granted summary judgment dismissing a plaintiff's complaint alleging that the defendant corporation (a retail toy company not engaged in the business of insurance) violated G. L. c. 93A, § 9, and G. L. c. 176D, § 3 (9), by the conduct of its risk management department during settlement negotiations with the plaintiff concerning her negligence claim against the company. [453-458]

Civil action commenced in the Superior Court Department on November 7, 2000.

The case was heard by *Charles J. Hely,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Steven T. Alpert (Martin D. Finkel* with him) for the plaintiff.

*Thomas F. Maffei* for the defendant.

*Ben Robbins* for New England Legal Foundation, amicus curiae, submitted a brief.

Greaney, J. We granted further appellate review in this case to consider whether an independent right of action exists under G. L. c. 93A, § 9, for unfair or deceptive claims settlement practices by a self-insuring corporate entity engaged in a trade or business. A judge in the Superior Court granted summary judgment dismissing the plaintiff's complaint alleging that the defendant corporation (a noninsurer) violated G. L. c. 93A, § 9, and G. L. c. 176D, § 3 (9), by engaging in "bad faith settle-

ment practices." The Appeals Court concluded that the dismissal of the plaintiff's complaint was an error of law, based ostensibly on principles stated in *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts., Inc.*, 36 Mass. App. Ct. 411 (1994), and held that the defendant may be liable under G. L. c. 93A, § 9, for its conduct during claims settlement negotiations, guided by criteria set forth in G. L. c. 176D, § 3 (9), defining unfair insurance claims settlement practices. *Morrison* v. *Toys "R" Us, Inc., Mass.*, 59 Mass. App. Ct. 613, 617-621 (2003). We disagree and now affirm the judgment.

1. No disputes of fact appear in the summary judgment record, which we briefly summarize. The plaintiff was injured on May 30, 1996, while shopping in a Toys "R" Us store in Kingston, when she was struck on the head and face by a falling sign. She initiated a negligence action in the Superior Court against the defendant, a wholly owned subsidiary of the holding company, Toys "R" Us, Inc. (together, Toys), to recover damages for her injuries.

The record indicates that, when a claim of less than $1 million is made against Toys, or one of its subsidiaries, the company handles that claim internally, through a risk management department in its national office designed exclusively to administer such claims. Claims adjusters in Toys' risk management department conducted settlement negotiations with the plaintiff. The plaintiff's initial demand for $250,000 was countered by an offer of $15,000, which the plaintiff rejected. After receiving a medical report of a dentist, hired by Toys, documenting the plaintiff's "substantial disability," Toys increased its settlement offer to $30,000. This, too, was rejected by the plaintiff. On the morning of trial, Toys made its highest offer of $45,000. At trial, the jury rendered a special verdict finding that negligence on the part of the defendant caused the plaintiff's injuries. The jury awarded the plaintiff $1.2 million in damages. The plaintiff accepted an order of remittitur, and an amended judgment ultimately was entered awarding damages in the amount of $250,000 (plus interest). No appeal from that judgment has been taken.

Shortly after the jury verdict in her favor, the plaintiff initiated the present action in the Superior Court under G. L. c. 93A,

§ 9, and G. L. c. 176D, seeking punitive damages, interest, costs, and attorney's fees, based on the failure of Toys' claims adjusters "to effectuate [a] prompt, fair, and equitable settlement[]" of her claim after the liability of Toys became reasonably clear. G. L. c. 176D, § 3 (9) (*f*). Toys moved to dismiss the complaint, and a judge (not the same judge who tried the negligence claim), treating the motion as one for summary judgment, see Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974), entered judgment in favor of the defendant. The judge reasoned that the defendant owed no legal duty to the plaintiff, under either G. L. c. 93A or G. L. c. 176D, to effectuate settlement of her claim, because, as a retail toy company not engaged in the business of insurance, it is not subject to the unfair settlement prohibitions set forth in G. L. c. 176D exclusively for insurers.

Relying on its earlier decision in *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts., Inc.*, *supra*, the Appeals Court concluded that, although Toys plainly is not an insurer within the meaning of G. L. c. 176D, it can still be liable in an independent cause of action for unfair claim settlement activities under G. L. c. 93A. The court reasoned that the claims settlement practices of a "self-insurer" such as Toys, conducted through its risk management department, "fall within the domain of the general consumer protections of [G. L.] c. 93A and, if conducted in an unfair and deceptive manner, may give rise to potential liability . . . irrespective of the applicability of the [G. L.] c. 176D insurance regulatory scheme of oversight." *Morrison* v. *Toys "R" Us, Inc., Mass.*, *supra* at 618-619. The court then reaffirmed what had been stated in the *Miller* decision, that the criteria set forth in G. L. c. 176D, § 3 (9), defining what is or is not "unfair or deceptive" for purposes of G. L. c. 93A, are relevant to a court's determination whether a defendant has engaged in unfair settlement practices under G. L. c. 93A. See *id.* at 620-621.

2. The plaintiff now appears to concede that Toys is not "engaged in the business of insurance" and, thus, not directly subject to G. L. c. 176D's regulatory scheme setting forth unfair or deceptive acts or practices in the business of insurance. She contends, nonetheless, that, as a corporation engaged in "trade or commerce," Toys became subject to G. L. c. 176D's standard

of fair settlement practices when it made the business decision not to purchase insurance from an outside insurer but, rather, to handle internally any claims for injuries occurring as a result of its negligence, thereby engaging itself in the business of claims handling.[1] The plaintiff argues that Toys violated G. L. c. 93A, § 9, when its claims adjusters offered only $15,000, $30,000, and $45,000 to settle her negligence claim, in view of its clear liability for the plaintiff's well-documented injuries and its receipt of two separate G. L. c. 93A demand letters requesting a settlement of $250,000. The plaintiff points to the jury's ultimate award of $1.2 million as further evidence that settlement negotiations with the plaintiff were conducted in bad faith. We review the entry of summary judgment under well-established standards, to determine whether Toys has demonstrated that there is no genuine issue as to any material fact and that it is entitled to a judgment as matter of law. See *Greater Lawrence Sanitary Dist.* v. *North Andover*, 439 Mass. 16, 20-21 (2003); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

The prohibitions set forth in G. L. c. 176D, § 3 (9), the statute regulating unfair acts and practices in the business of insurance, "were enacted to encourage settlement of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief." *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 567-568 (2001), quoting *Clegg* v. *Butler*, 424 Mass. 413, 419 (1997). They specifically were "designed to remedy a host of possible violations in the insurance industry and [were imported to G. L. c. 93A by virtue of St. 1979, c. 406, § 1, amending G. L. c. 93A, § 9 (1),] to subject insurers committing violations to the remedies available to an injured party under G. L. c. 93A." *Hopkins* v. *Liberty Mut. Ins. Co.*, *supra* at 562. See *Bobick* v. *United States Fid. & Guar. Co.*, 439 Mass. 652, 659 (2003); *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 121 (1994). One obvious legislative concern

---

[1]The parties refer to Toys as "self-insured." The status of being "self-insured" means the assumption of one's own risk, instead of transferring it to a third-party insurer by means of purchasing insurance coverage. The term "self-insured" is a manner of referring to a decision not to be insured by a third party when one has the financial means (in fact or assumption) to satisfy claims or judgments imposing liability for wrongful conduct.

was that entities that profit from selling insurance policies not abuse exclusive rights and duties to control litigation vested through those same policies.

The plaintiff argues that Toys committed unfair trade practices prohibited by G. L. c. 176D, § 3 (9) (*d*), (*f*), and (*g*), when it refused initially to pay her claim without conducting a reasonable investigation; when it failed to effectuate a prompt, fair, and equitable settlement of her claim when its liability was clear; and when it compelled her to institute litigation by offering substantially less than the amount ultimately recovered in her underlying negligence action. The difficulty with the plaintiff's argument is that the conduct of which she complains, by the statute's own terms, is unlawful only when committed by entities "engaged in the business of insurance." G. L. c. 176D, § 1 (*a*). See *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts., Inc., supra* at 417-418. The concerns underlying the enactment of G. L. c. 176D and G. L. c. 93A cannot legitimately be extended to a self-insurer such as Toys, which had no contractual obligation to settle the plaintiff's claim and is not otherwise regulated by the Commonwealth for insurance activities. See *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 51 (1994) (business of insurance "involves 'profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices' ").

The Appeals Court's reliance on *Miller* v. *Risk Mgt. Found. of the Harvard Med. Insts., Inc., supra*, is misplaced. The defendant in that case (Risk Management) was a Massachusetts charitable organization that operated as a "facilitator" in handling medical malpractice claims against Harvard University affiliated hospitals. *Id.* at 412. Medical malpractice insurance for the hospitals was provided by Controlled Risk Insurance Company (CRICO), an entity organized in the Cayman Islands. Both CRICO and Risk Management were owned by Harvard and its affiliated (but separate corporate) hospitals. *Id.* at 416. The *Miller* court properly concluded that "Risk Management, as claims negotiator and potential settler, has been interposed between the insurer CRICO and the claimant, and nothing seems more appropriate than to apply to it the standards of fair dealing expressed in [G. L.] c. 176D, § 3 (9)." *Id.* at 418. The

significance of the holding of the Appeals Court in the *Miller* case is that an insurance company cannot evade its statutory duties imposed by G. L. c. 176D by delegating its work. It is here that any analogy between *Miller* and the case at hand breaks down. The fact that Toys itself employs claims adjusters to administer and negotiate certain claims only against itself does not make it a member of the insurance industry.[2] The *Miller* decision simply cannot be read to impose an affirmative claim settlement duty on the risk management department of Toys, when none could be imposed on Toys itself.

The facts of the present case are reminiscent of those in *Anzalone* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 119 (1988). In that case, a police officer brought a G. L. c. 93A action against his employer, the Massachusetts Bay Transportation Authority (MBTA), alleging that it had engaged in unfair or deceptive acts in the handling of his workers' compensation claims. See *id.* at 120. We concluded that the MBTA, a self-insurer under G. L. c. 152, could not be liable under G. L. c. 93A, § 9, for refusing to pay workers' compensation payments. "Even if we assume the truth of Anzalone's allegations, G. L. c. 176D does not apply to the MBTA. General Laws c. 176D, § 1 (*a*), states that it applies to any self-insurer 'which is engaged in the business of insurance.' A self-insuring employer under the workmen's compensation law does not become an insurance company." *Id.* at 122, citing *Bertrand* v. *Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984). Under much the same reasoning, the business decision of Toys to self-insure (or not insure) against certain losses arising from the operation of its retail stores does not transform it into an "insurer" for purposes of G. L. c. 93A.[3]

Our decision in no way allows a self-insuring corporate

---

[2]The plaintiff suggests that Toys' disclaimer of insurance expertise on the part of its claims adjusters exposes Toys to liability under G. L. c. 93A or to a breach of fiduciary duty suit by its stockholders. This suggestion has no merit.

[3]Our holding in this case accords with decisions by appellate courts in other States that, presented with similar circumstances, declined to expose self-insured, or uninsured, parties to liability for claim settlement practices. See *Davidson* v. *American Freightways, Inc.*, 25 S.W.3d 94, 102 (Ky. 2000); *Hebard* v. *Dillon*, 699 So. 2d 497, 500 (La. Ct. App. 1997); *Southeastern Pa. Transp. Auth.* v. *Holmes*, 835 A.2d 851, 855 (Pa. Commw. Ct. 2003); *Kitchell* v. *Public Serv. Co. of N.M.*, 126 N.M. 525, 528 (1998); *Hawkins* v. *Ford Mo-*

defendant to, in the plaintiff's words, " 'opt' out from the applications of [G. L. c.] 93A." It is beyond question that Toys has an obligation to conduct its dealings with consumers and competitors in a manner fully consistent with standards of legal and ethical behavior required by the statutory scheme. We have stated that "a practice or act will be unfair under G. L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." *Heller Fin.* v. *Insurance Co. of N. Am.*, 410 Mass. 400, 408 (1991). We emphasize, however, that G. L. c. 93A applies only to actions taken in the course of "trade or commerce," *First Enters., Ltd.* v. *Cooper*, 425 Mass. 344, 347 (1997), and has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those "engaged in the business of insurance." See *Framingham Auto Sales, Inc.*, v. *Workers' Credit Union*, 41 Mass. App. Ct. 416, 418 (1996) ("Mere resistance to a just claim is not the stuff of [G. L.] c. 93A, except where made such by statute . . ."). See, e.g., *Gath* v. *M/A-Com, Inc.*, 440 Mass. 482, 497-498 (2003); *Cady* v *Marcella*, 49 Mass. App. Ct. 334, 343 (2000); *Arthur D. Little, Inc.* v. *East Cambridge Sav. Bank*, 35 Mass. App. Ct. 734, 743 (1994). We have stated that "[t]he purpose of G. L. c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 53

*tor Co.*, 211 W. Va. 487, 492 (2002). In *Davidson* v. *American Freightways, Inc.*, *supra*, for example, the Supreme Court of Kentucky concluded that a self-insured motor carrier may not be liable under Kentucky's Unfair Claims Settlement Practices Act, Ky. Rev. Stat. § 304.12-230, for failing to settle a claim with an injured motorist. We quote with approval the court's reasoning:

> "The gravamen of [the statute] is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is *contractually obligated to pay*. Absent a contractual obligation, there simply is no bad faith cause of action either at common law or by statute." (Emphasis original.)

*Id.* at 100.

(1994). See *Manning* v. *Zuckerman*, 388 Mass. 8, 12 (1983); *Dodd* v. *Commercial Ins. Co.*, 373 Mass. 72, 80 (1977). This purpose would not be furthered by a construction of the statute that would expose ordinary defendants (even large corporations such as Toys) to the risk of liability for multiple damages and attorney's fees for choosing to go to court rather than settling a dispute, on the ground that its litigation tactics are perceived, by the opposing side, to be unfair.[4] We do not read the criteria set forth in G. L. c. 176D, § 3 (9), defining unfair claim settlement practices in the insurance industry, as a blanket guarantee to consumers that claims against companies with which they do business, even claims in which liability is clear, will be settled before going to court.[5]

Because Toys is not an insuring entity subject to standards imposed by G. L. c. 176D, § 3 (9), it cannot, as matter of law, be held liable under G. L. c. 93A for bad faith settlement practices. As an ordinary defendant, Toys had no affirmative duty to settle the plaintiff's claim.

*Judgment affirmed.*

---

[4]Allegations in the plaintiff's supplemental brief referring to "bad faith" behavior exhibited by Toys during the discovery process are not before us. We see no reason, however, why appropriate channels for dealing with this alleged conduct are not adequately provided by Mass. R. Civ. P. 37 (a) (4), as amended, 417 Mass. 1401 (1994); Mass. R. Civ. P. 37 (c), 365 Mass. 797 (1974); and G. L. c. 231, § 6F.

[5]There is no authority to support the plaintiff's bold assertion that Toys' constitutional right, under art. 15 of the Declaration of Rights of the Massachusetts Constitution, to choose to have a jury decide a negligence claim against it is "far outweigh[ed]" by consumer protection concerns.