Gershengorn, J.
The plaintiffs commenced this action, alleging a violation of G.L.c. 93A, unfair and deceptive trade practices in the conduct of trade or commerce and G.L.c. 176D, unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. In addition, the Complaint alleges a breach of covenant of good faith and fair dealing. After a trial without a juiy, and based on all of the credible evidence, the court makes the following findings of fact and conclusion of law.

*106
FINDINGS OF FACT

1. Plaintiffs Italo Evangelista and Anna Evangelista (“the Evangelistas”) are the record owners of a dwelling and the surrounding real property located at 117 Birch Lane, North Falmouth, Massachusetts (the “home”). The home was not the Evangelistas’ primary residence. Rather, it was their summer home.
2. The Evangelistas contracted with the Defendant Hingham Mutual Fire Insurance Company (“Hingham Mutual”) for insurance coverage for the home. The policy covered the period from December 29, 2002 to December 29, 2003 and included the foregoing “Unoccupied Residence” provision:
We do not pay for loss caused by freezing or the resulting discharge, leakage, or overflow from any plumbing, heating, air conditioning, or automatic sprinkler system; water heater; or domestic appliance if the residence is vacant, unoccupied or under construction and unoccupied. This exclusion does not apply if you take reasonable care to:
a. maintain heat in the building; or
b. shut off the water supply and completely empty liquids form such system, heater or appliance.
3. On or about December 14, 2002, the Evangelistas “closed" the home for the winter months. They set the thermostat at sixty-three degrees and exited the home, with the intention that they would not return until the next summer. The Evangelistas did not leave a key with anyone, nor did they hire a company to check on the home during their absence. They instructed the Electric Company (N-Star), the Gas Company (K-Span), and the Water Company to send monthly bills to their permanent residence at 83 Hancock St., Malden, MA.
4. During the last few weeks of January 20, 2003, the City of Falmouth and surrounding cities and towns experienced a “deep freeze.” Record low temperatures were consistently reported during this time. On January 18, 2003 and again on January 23, 2003, the lowest degree days, the average temperature was approximately nineteen degrees below average.
5. Despite the record low temperatures, the Evangelistas did not check the home. Nor did they ask any other person to check the home for freezing. The home was not equipped with any type of alarm devices to detect low heat or no heat. In addition, the boiler in the home had not been serviced in nine years. The owners’ manual for the boiler recommends service once per year.
6. At some time in between the end of January and March 2003, the heat stopped functioning at the home. As a result, the pipes froze and subsequently burst. On March 11, 2003, a neighbor alerted the Evangelistas that there was ice and large streams of water pouring out of the home. A Town of Falmouth Water bill received by the Evangelistas sometime in June evidenced that over $5,000 worth of water passed through the property.
7. At some time in January 2002, the Evangelistas received bills from the electric company (N-Star). The bills showed that there was no electricity usage (0 kilowatts) for the billing periods of December and January.[2] Given the frigid temperatures, a reasonable person would have been alerted to a problem and would have either checked the home or asked someone to do so for them.
8. Hingham Mutual was made aware of the loss on or about March 11, 2003. The claim was assigned to Friedline, Carter, an independent adjusting firm, who in turn assigned the claims to Mark Newman (“Mr. Newman”). Mr.. Newman has nineteen years of experience in insurance adjustment.
9. On or about March 18, 2003, Mr. Newman inspected the 'property and met with a public insurance adjuster, retained by the Evangelistas. At that time, Mr. Newman became aware that the property was unoccupied all winter and that no one had been instructed or hired to check on the property. Upon learning this information, Mr. Newman informed the Evangelistas that there would likely be a coverage issue. He requested the Evangelistas to submit utility bills for the preceding months.
10. Hingham Mutual hired outside counsel, Ethan Warren, Esq. of Warren Hensley & Bowen, LLP, to advise them on the Evangelista’s claim. Independent legal advice, reasonably based on the facts and the policy, indicating reasonable grounds for denying coverage precludes a finding that liability for the claim was reasonably clear. Van Dyke v. St Paul Fire & Marine Ins. Co, 388 Mass. 671, 677 (1983).
11. On or about March 19, 2003, Hingham Mutual sent a reservation of rights letter to the Evangelistas outlining the coverage issue of whether the Evangelistas acted reasonably to maintain the heat in the home.
12. Mark Newman, with Hingham Mutual’s authority, hired Industrial Services Engineering (“ISE”) to further investigate the cause and origin of the loss of heat. ISE reported that the pilot light on the boiler was working improperly and this was thought to be the cause of the loss of heat to the home. However, an exact reason why the pilot light went out was never determined.
13. Hingham Mutual denied coverage to the Evangelistas asserting that they had not taken reasonable steps to maintain the heat in accordance with the terms of the insurance policy.
14. On September 3, 2003, pursuant to G.L.c. 93A, counsel for the Evangelistas sent a demand letter to Hingham Mutual.[3]
15. The Evangelistas commenced this action, claiming a violation of G.L.c. 93A, unfair or deceptive trade practices and G.L.c. 176D, unfair methods of *107 competition and unfair or deceptive acts or practices in the business of insurance and a breach of the covenant of good faith and fair dealing. The Complaint also alleged disparate treatment under G.L.c. 93A, specifically, that Hingham Mutual did not treat the Evangelista claim the same way it treated similar claims such as the Marani claim, which was also a claim involving a “freeze-up” at an unoccupied residence.
16.1 find that the Evangelistas did not take reasonable care to maintain the heat at their unoccupied house. I further find that, under the facts of this case, Hingham Mutual acted reasonably in failing to make an offer of settlement.

RULINGS OF LAW

A.Breach of Covenant of Good Faith and Fair Dealing

1. Under Massachusetts law, every contract is subject to an implied covenant of good faith and fair dealing. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-73 (1991).
2. Under the implied covenant of good faith and fair dealing, the parties to the contract are obligated to deal with each other honestly and in good faith not only with respect to the performance of the terms of the contract, but also in their enforcement in the terms of the contract. Hawthorne’s, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 221 (1993).
3. In the present case, Hingham Mutual did not, in any way, treat the Evangelistas in an unfair manner as to rise to a breach of the implied covenant of good faith and fair dealing. On approximately March 18, 2003, early on in the claim process, Hingham Mutual notified the Evangelistas that there might be problems with coverage. To investigate the loss, it hired the engineering firm of ISE to determine the reason why the heat stopped functioning. In addition, it retained an outside attorney to give an independent assessment on the coverage issue. All of these facts indicate a good faith effort to investigate, the loss and to determine whether or not coverage should be provided. In addition, at all times prior to the inception of this lawsuit, Hingham Mutual made the Evangelistas aware of coverage issues, and worked to keep them informed throughout the process. These facts do not indicate bad faith of any type which would give rise to a breach of good faith and fair dealing.

B.Adequacy of 93A Demand Letter

1. Mass. Gen. Laws ch. 93A, §9(3) provides: “[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied on and the injury suffered, shall be mailed or delivered to any prospective respondent.” Id.
2. An adequate demand letter “will define the injury suffered and the relief demanded in a manner that provides the prospective defendant an opportunity to review the facts and law implicated to see if requested relief should be granted or denied and to enable them to make a reasonable tender of settlement in order to limit recoverable damages.” Simas v. House of Cabinets, Inc., 53 Mass.App.Ct. 131, 139 (1985). See also Fredericks v. Rosenblatt, 40 Mass.App.Ct. 713 (1996).
3. It is a knowing and willful violation of Chapter 93A for one who receives a demand letter pursuant to the statute to respond unreasonably or in bad faith. G.L.c. 93A, §9(3).
4. In the present case, the court does not find that Hingham Mutual acted unreasonably or in bad faith. Rather, there was a good faith difference of opinion with respect to whether the Evangelistas acted reasonably to maintain heat at the residence. In addition, Hingham was not able to respond to the disparate treatment claim because it was not mentioned in the letter.
C.G.L.C. 93A & G.L.c. 176D Unfair or Deceptive Trade Practices[4]
1. The purpose of G.L.c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace. Darviris v. Petros, 442 Mass. 274, 278 (2004); Morrison v. Toys 'R US, Inc., 441 Mass. 451, 457 (2004). A practice or act is unfair under G.L.c. 93A if it is within the penumbra of common-law, statutory or other established concepts of unfairness; if it is immoral, unethical, oppressive or unscrupulous; or it causes substantial injury to competitors or other business people. Morrisson v. Toys “R” Us, Inc., 441 Mass. at 457.
2. In order for a 93A claim to succeed, the law requires more than a mistake or an honest dispute concerning a contract. Ecological Fibers, Inc. v. Kappa Graphic Board, B.V., 345 F.Sup.2d 13, 15 (D.Mass. 2004). Our courts have held that “[a] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made.” Duclersaint v. Federal Natn’l Mort. Ass’n., 427 Mass. 809, 814 (1998).
3. In the present case, the court finds that there was an honest difference of opinion between Hingham Mutual and the Evangelistas regarding whether or not reasonable steps were taken to adequately maintain heat.
4. In addition, the court does not find disparate treatment among Hingham Mutual’s insurance claims. The court finds there to be a number of differentiating characteristics between the Marani claim and the Evangelistas. Namely, that the boiler was checked in the prior year and that there was a person charged with checking on the home on a regular basis. The court does not find that Hingham Mutual acted in a way that could be construed as “deceptive” when it denied the Evangelistas’ claim and allowed the Marani claim. See Grossman v. Waltham *108 Chemical Co., 14 Mass.App.Ct. 932, 933 (1982) (“a practice is deceptive if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted”).

ORDER

Based on the foregoing findings of fact and rulings of law, the court hereby ORDERS that judgment enter in favor of the defendants, Hingham Mutual Fire Insurance Company.

The billing date for the first bill was December 30, 2002. The billing date for the second bill was January 29, 2003.

The letter made no reference to disparate treatment. Thus, Hingham was unable to consider this claim when assessing a reasonable settlement offer, as required by the statute.

G.L.c. 176D authorizes the Commissioner of Insurance to regulate the issuance of insurance policies. Section 3(9)(a)-(n) of the act defines certain activities as unfair settlement practices. The commissioner may take action against an entity, including revocation of its license, suspension or a fine, if he or she finds, after an investigation and a hearing, that unfair claim settlement actions have occurred. Adams v. Liberty Mut Ins. Co., 60 Mass.App.Ct. 55, 62 &n.l4 (2003). G.L.c. 176D does not, however, create a private right of action to an aggrieved individual. Recourse for those individuals injured by an insurer’s G.L.c. 176D violation is available through G.L.c. 93A, §9 as consumers. Schwartz v. Travelers Indem. Co., 50 Mass.App.Ct. 672, 675-76 & n.4 (2001).