Coffey, J.
The plaintiff in the case, C. Peter R. Gossels (Gossels), filed a complaint against the defendant, Fleet National Bank (Fleet) on October 4, 2001. Count I of the complaint alleged that Fleet breached its agreement to act in good faith to collect the euro proceeds from a check that it accepted from Gossels. Count II of the complaint alleged that Fleet converted to its own account the euros that belonged to Gossels, and Count III of the complaint alleged that Fleet violated G.L.c. 93A, §§2, 9.
Gossels subsequently filed a motion to amend the complaint and add a fourth count, which was allowed. Count IV of the complaint alleged that Fleet owed Gos-sels the sum of 84,971.19 euros that it received from a German bank on account of a check that Gossels had given to Fleet.
After trial, the trial judge found for Gossels on Count I of the complaint. The trial judge characterized Fleet’s conduct as negligent misrepresentation and not breach of an agreement to act in good faith. Gossels was awarded damages in the amount of $6,861.68 and interest in the amount of $2,021.29 for a total award of $8,882.97. The Court found for Fleet on Counts II, III and IV of the complaint.
The trial judge declined to rule on Gossels’ requests for rulings of law, stating that Gossels had filed an excessive number of requests and had failed to conform them to Mass. R. Civ. R, Rule 64A(a).
Gossels has appealed the judgment for Fleet on Counts II, III and IV of the complaint. In addition, he alleges that the prejudgment interest was incorrectly calculated and that the trial judge abused her discretion when she did not rule on Gossels’ requests for rulings of law.
The facts of this matter are essentially as follows.[1] On October 15,1999, Gossels brought a check in the amount of 85,071.19 euros to the international teller at Fleet. Gossels had received the check from the German government as a repara *145 tions payment for an apartment that the Nazis took from Gossels’ family during World War II. The check was drawn on Dresdner Bank in Germany.
Gossels asked the teller at Fleet to collect the total amount of the check in euros. Gossels did not request that the check be converted into dollars, and the teller failed to inform Gossels that Fleet could only pay the amount of the check in dollars and not euros because it does not maintain any accounts in euros. If Gos-sels had known that Fleet intended to give him dollars instead of euros, he would have declined to give the check to Fleet and would have taken it to another bank.
When Gossels asked the teller whether he should endorse the check, the teller told him that no endorsement was required because the check was drawn on a foreign bank. The teller handed a pre-printed receipt to Gossels after she accepted the check from him. The receipt provided that the check was accepted for either “provisional credit” or for “collection only,” but neither option was checked on the receipt. If Fleet had given Gossels provisional credit for his euros check, the funds in dollars would have been credited to his account on or shortly after October 15, 1999. At that point, Gossels believed that Fleet would pay euros to him in exchange for the check that was denominated in euros. Fleet did not disclose that it intended to present dollars, nor did it explain the terms of the exchange rate.
In a transaction such as this one involving foreign currency, Fleet acts as the collecting bank. The process requires Fleet to send the check to its Global Collection Department, which sends the check and a collection letter to Fleet’s foreign correspondent bank. In this case, Fleet’s foreign correspondent bank was Deut-sche Bank in Germany. Deutsche Bank collected the funds as Fleet’s main bank contact in Germany by logging the check into its system and mailing the check to the Dresdner Bank in Germany, which was the foreign bank on which the check was drawn. Upon its receipt of the check, Dresdner Bank debited the funds from the appropriate account and sent 85,071.19 euros to Deutsche Bank, which credited 84,971.19 euros[2] to Fleet’s account in that bank.
Fleet maintains a manual for foreign check collection practices. The manual states that the Fleet teller is obligated to inform the customer that it takes four to six weeks before a customer receives payment on a foreign check. The manual also requires the teller to inform the customer of the date of determination of the exchange rate and that the exchange rate is based on the date of Fleet’s receipt of the funds from the foreign bank. When Fleet receives funds from a foreign bank for a check drawn on that bank, Fleet does not pay the exchange rate in that foreign country because Fleet does not know the exchange rate in that country on a daily basis. Fleet failed to provide Gossels with this information.
On November 11, 1999, Gossels received a notice from Fleet stating that the euros check had been returned unpaid because it did not bear an endorsement. Upon receipt of the notice, Gossels walked to the Fleet branch at 75 State Street and told the manager that the international teller had instructed Gossels not to endorse the check. The manager asked Gossels to endorse the check, credited his account for $38.25, which represented lost interest, and waived the $30.00 fee that Fleet had charged Gossels for failing to endorse the check.
On December 15,1999, Gossels received notice from Fleet that it had credited his account for $81,754.77, which was the equivalent of 84,971.19 euros. The same number of euros would have been worth $88,616.45 based on the exchange rate on October 15,1999, which represents a decrease of $6,861.68 or 7.7 percent. This was the first time that Fleet informed Gossels that he was receiving dollars instead of euros. At that point, Gossels called Fleet and said that he had wanted euros and not dollars. He was informed that Fleet pays only dollars and not euros.
*146 One of Gossels’ main arguments on appeal is that the trial judge erred in finding for Fleet on Gossels’ claim under G.L.c. 93A, §§2, 9. Section 2 of G.L.c. 93A prohibits “unfair or deceptive acts or practices in the conduct of any trade or commerce. ...” Under G.L.c. 93A, §9(1), a person who is injured by another’s use or employment of an unlawful act or practice under section two may bring an action for damages. As a private individual engaged in a commercial transaction on a nonprofessional basis, Gossels brought his claim under section 9 of G.L.c. 93A and not section 11. See Gargano & Assocs., P. C. v. John Swider & Assocs., 55 Mass. App. Ct. 256, 262 (2002) (distinction between a business person and a private individual in actions under G.L.c. 93A).
It is well established that “a practice or act [is] unfair under G.L.c. 93A, §2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 457 (2004). Moreover, ‘“the purpose of G.L.c. 93A is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.’” Id., quoting Poznik v. Massachusetts Med. Professional Ins. Ass’n, 417 Mass. 48, 53 (1994).
As the trial judge ruled, Fleet was negligent for failing to inform Gossels about its check collection procedure with foreign banks. Fleet does not dispute that it failed to provide Gossels with this information. Rather, Fleet’s argument to the trial judge and on appeal is that its failure to do so was not a violation of G.L.c. 93A as a matter of law. We agree with the trial judge’s conclusion that Fleet’s conduct was “neither deceptive nor unfair within the meaning of G.L.c. 93A.” The conduct did not rise to the level of “immoral, unethical, oppressive or unscrupulous” conduct that is necessary for a G.L.c. 93A violation.[3]
Gossels also argues that the trial judge erred in finding for him on a negligent misrepresentation theory when Count I of the complaint alleged breach of contract. A breach of contract claim would entitle Gossels to a higher amount of prejudgment interest because under G.L.C. 231, §6C, interest is computed from the date of the breach. On a tort claim, interest is computed under G.L.c. 231, §6B from the date that the action was commenced.
Our review of the record indicates that there was ample evidence presented on both sides regarding the details of the transaction between Gossels and the teller at Fleet. The failure by Gossels to specifically plead negligent misrepresentation in the complaint did not preclude the Court from considering the issue. See Jensen v. Daniels, 57 Mass. App. Ct. 811, 815 & n.11 (2003) (required notice of certain claim need not be detailed, and the complaint need not even state the correct substantive theory of the case). Count I of the complaint alleged that Fleet “fail[ed] to act in good faith to collect the euro proceeds from the check that it had accepted from Gossels on October 15,1999....” As the evidence presented at trial was consistent with a theory of negligent misrepresentation and not breach of contract, the trial judge acted well within her discretion in finding for Gossels on that basis.
The trial judge calculated Gossels’ damages as the difference between the amount that Gossels would have received if Fleet had granted him provisional credit on October 15,1999 and the amount that was actually credited to Gossels’ account on December 15,1999. Those damages were calculated based on the exchange rate *147 at Fleet on October 15, 1999. Fleet was not required to pay Gossels based on the exchange rate in Germany on October 15,1999, or on another date, and G.L.c. 106, §3-107 did not compel Fleet to do so. Section 3-107 provides as follows:
Unless the instrument otherwise provides, an instrument that states the amount payable in foreign money may be paid in the foreign money or in an equivalent amount in dollars calculated by using the current bank-offered spot rate at the place of payment for the purchase of dollars on the day on which the instrument is paid.
The paying bank was the Dresdner Bank in Germany. Section 3-107 provides an option to the paying bank when a check “states the amount payable in foreign money” such as euros. Under G.L.c. 106, §3-107, Dresdner Bank had the option of paying in either euros or dollars, with the amount of dollars to be “calculated by using the current bank-offered spot rate.” Dresdner Bank chose to pay in euros and sent the euros to Deutsche Bank, which credited the money to Fleet’s account in that bank. Fleet then converted the euros to dollars based on the exchange rate in effect on December 15, 1999, which was the date of its receipt of the funds. Nothing in Section 3-107 required Fleet to pay the exchange rate that was in effect in Germany on an earlier date.
The trial judge was within her discretion in declining to rule on the requests for rulings of law filed by Gossels. The number of requests was excessive, and many of them did not comply with Mass. R. Civ. R, Rule 64A(a). In addition, the judge made findings of fact and explained the legal basis for her decision in her written Memorandum of Decision and Order.
Accordingly, for the foregoing reasons, we affirm the trial judge’s entry of judgment for Gossels on Count I of the complaint and the award of damages to Gos-sels. We affirm the entry of judgment for Fleet on Counts II, III and IV of the complaint and dismiss Gossels’ appeal.

 The trial judge made findings of fact in a written Memorandum of Decision and Order. In addition, because of a problem with the recording equipment during the trial, the main portion of the testimony of Mr. Roderick Murphy was not recorded. Mr. Murphy was the manager of Fleet’s Global Collections Unit and Fleet’s sole witness at trial. The trial judge granted Fleet’s motion to correct the record and add Mr. Murphy’s testimony to it pursuant to Dist./Mun. Cts. R. A. D. A, Rule 8C(f).
After examination of her typed notes taken during the trial, the trial judge set forth Mr. Murphy’s testimony in her Decision and Order on Defendant Fleet National Bank’s Motion to Correct Record. The facts set forth in this opinion are taken from both written decisions.

 Deutsche Bank received a fee of 100 euros, which was subtracted from the total amount.

 Nor did Gossels present any evidence at trial that Fleet was using its own “secret” exchange rate in its foreign currency collection business in order to profit at the expense of its customers. Such evidence, if presented, would have provided additional support for Gossels’ claim under G.L.c. 93A, §9. See Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 324 (2004) (public benefits when individuals expose deceptive business practices).