Fabricant, Judith, J.
INTRODUCTION
This action arises from the events described in Cahaly v. Benistar Property Exchange Trust Company, Inc., 451 Mass. 343 (2008) (“Cahaly”). The plaintiffs here, who are the plaintiffs in that case, claim fraud and G.L.c. 93A violations by the defendant Merrill Lynch based on its conduct in that litigation. Before the Court is the defendant Merrill Lynch’s motion to dismiss for failure to state a claim. For the reasons that will be explained, the motion will be allowed.
BACKGROUND
The history of the dispute as it appears in the Supreme Judicial Court’s decision in Cahaly, 451 Mass. at 345-47, is essentially as follows. The plaintiffs, a group of individuals and institutions, contracted with Benistar Property Exchange Trust Company, Inc. (“Benistar”), to hold their funds in escrow while they engaged in tax-advantaged “like kind” properly exchanges. Benistar deposited the funds in margin accounts with Merrill Lynch, and later with UBS Paine Webber, Inc., and then used the funds to engage in high-risk option trading, resulting in losses of more than eight million dollars.
The plaintiffs brought a set of suits against Benistar, its principals and related entities (collectively, “Benistar”), Paine Webber, and Merrill Lynch. The claims against Merrill Lynch alleged that it aided and abetted Benistar’s breach of fiduciary duly. Those cases were consolidated, and eventually tried before Judge Botsford. The plaintiffs won jury verdicts against Benistar and Merrill Lynch. Judgment entered on the verdicts against Benistar, but Judge Botsford allowed Merrill Lynch’s motion for judgment notwithstanding the verdict, ruling that the evidence was insufficient to support a finding that Merrill Lynch had actual knowledge of Benistar’s fiduciary role. 
Thereafter, the plaintiffs moved to reinstate the jury verdict, on the ground that newly discovered evidence established Merrill Lynch’s knowledge. After an evi-dentiary hearing, Judge Botsford declined to reinstate the jury verdict, but did order a new trial on the plaintiffs’ claims against Merrill Lynch. The Supreme Judicial Court affirmed Judge Botsford’s rulings in Cahaly, and remanded the case to this Court, where it is now scheduled for trial in June of 2009. See Cahaly, 451 Mass. at 369.
The plaintiffs filed this action on February 15,2008, while the Cahaly case was under advisement before the Supreme Judicial Court. The complaint sets forth the basic factual allegations underlying the claims against Merrill Lynch in Cahaly, along with a set of factual allegations relating to Merrill Lynch’s conduct during the Cahaly litigation, which may be summarized as follows. In 2001, before Merrill Lynch was joined as a defendant in Cahaly, the plaintiffs served on it a subpoena seeking documents relating to the Benistar accounts; Merrill Lynch did not produce documents it had been provided that put it on notice of Benistar’s fiduciary role. Later, after Merrill Lynch was joined as a defendant and served with discovery requests, it still failed to produce those documents. Merrill Lynch “lied about its involvement with the Benistar accounts and destroyed, concealed and/or failed to produce the documents evidencing its participation with Benistar in the misuse of Benistar’s clients’ funds.” Merrill Lynch “has persisted in its denial of liability” despite plaintiffs’ discovery of documents Merrill Lynch had “destroyed, concealed and/or failed to produce” and despite Merrill Lynch’s knowledge “that the testimony provided at trial by its brokers was perjurious.” Merrill Lynch “has pursued litigation in an attempt to harass plaintiffs, to impose financial costs and emotional distress on the plaintiffs and to extort plaintiffs to settle for less than they are owed.” As a result, the complaint alleges, the plaintiffs “have suffered damages in the form of the attorneys fees, the loss of use of money, tax liabilities, accountants’ fees and emotional distress.”
Based on those factual allegations, the complaint sets forth three counts: violation of G.L.c. 93A (count I); fraud (count II), and “malicious defense” (count III). Merrill Lynch moves to dismiss all counts, contending that the conduct alleged does not constitute either violation of G.L.c. 93A or fraud, and that Massachusetts does not recognize a cause of action for “malicious defense.” The Court agrees.
DISCUSSION
The Supreme Judicial Court recently addressed the standard applicable to a motion to dismiss, and adopted the newly established federal standard, as articulated in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007): “While a complaint attacked by a .. . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp., 127 S.Ct. 1955 at 1964-65 (internal quotations omitted). At the pleading stage, the plaintiff must present “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief, in order to ‘reflect! ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the ‘plain statement’ possess enough heft to ‘show[ ] that the pleader is entitled to relief.’ ” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1966. In applying this standard, the Court accepts the factual allegations of the complaint as true, but disregards characterizations and conclusions. See e.g. Boston & Maine R.R. v. County Commr’s of Middlesex, 239 Mass. 127, 131 (1921).
*363 1.Count I: G.L.c. 93A
The plaintiffs’ complaint alleges, in substance, that by defending against the plaintiffs’ claims, and by doing so in the manner alleged, Merrill Lynch violated c. 93A and committed torts.[1] General Laws c. 93A “is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.” Kattar v. Demoulas, 433 Mass 1, 12 (2000) (bad faith foreclosure in retaliation for plaintiffs refusal to give testimony, in reckless disregard of the truth of the proposed testimony, violated c. 93A). The statute applies, however, “only to actions taken in the course of‘trade or commerce,’... and has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those ‘engaged in the business of insurance.’ ” Morrison v. Toys “R” Us, Inc., Massachusetts, 441 Mass. 451, 457 (2004) (internal citations omitted). Such a broad reading of the statute, the Court observed in that case, would not further its purpose “to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace,” but would instead “expose ordinary defendants ... to the risk of liability for multiple damages and attorneys fees for choosing to go to court rather than settling a dispute, on the ground that its litigation tactics are perceived, by the opposing side, to be unfair.” Id., at 457-58.[2]
The plaintiffs seek to distinguish Morrison on the ground that their claims against Merrill Lynch “are not based on its failure to settle their aiding and abetting claims,” but rather on its “attempting to cover-up its involvement by destroying documents and lying about its knowledge of and participating in the scheme.” The distinction is less than faithful to the allegations of the plaintiffs’ own complaint, which asserts that Merrill Lynch “has persisted in its denial of liability” and “has pursued litigation in an attempt to harass plaintiffs, to impose financial costs and emotional distress on the plaintiffs and to extort plaintiffs to settle for less than they are owed.” More to the point, the distinction reads Morrison more narrowly than its language and reasoning dictate. The Supreme Judicial Court’s holding, in substance, was that the conduct of litigation is not conduct in trade or commerce, and therefore does not give rise to liability under G.L.c. 93A, except where the legislature has expressly subjected such conduct to that statute, as in G.L.c. 176D. See also Gath v. M/A-COM, Inc., 440 Mass. 482, 498-99 (2003) (no cause of action under c. 93A for spoliation of evidence); Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 551-52 (2002) (no common-law tort cause of action for spoliation of evidence). Count I of the complaint therefore fails to state a claim on which relief may be granted.
2.Count II: Fraud
Count II, after incorporating all previous allegations, alleges that “Merrill Lynch’s willfully and knowingly engaging in unfair and deceptive conduct constitutes fraud.” The Court has carefully examined the factual allegations in an effort to identify facts that would establish the elements of fraud: a false statement, of material fact, intended to induce reliance, on which the plaintiffs actually and reasonably relied. See Friedman v. Jablonski, 371 Mass. 482, 488 (1976). That examination has not yielded the necessary results, particularly in light of the heightened pleading requirement for fraud pursuant to Mass.R.Civ.P. 9(b).
Paragraphs 12, 13 and 15 of the complaint allege Merrill Lynch was given certain information and provided with certain documents. Paragraphs 22 and 24 allege Merrill Lynch did not produce or identify those documents in response to discovery requests, and paragraph 25 alleges Merrill Lynch “destroyed, concealed and/or failed to produce” those documents. These allegations may have provided a basis for sanctions in the underlying case, pursuant to Mass.R.Civ.P. 37, but they fall far short of alleging fraud. See Fletcher, 437 Mass. at 550-51.
Paragraph 25 begins to approach fraud: it alleges that “Merrill Lynch lied about its involvement with the Benistar accounts.” However, it does not specify exactly what the lie was, or who uttered it, or when. Nor does it indicate any reliance by the plaintiffs on the alleged lie. Paragraph 26 gets slightly more specific in alleging that “Merrill Lynch’s brokers testified under oath that they had no knowledge that the Benistar accounts contained other people’s money.” Paragraph 29 suggests that such testimony was false, without explicitly saying so, by referring to Merrill Lynch’s “knowledge that the testimony provided at trial by its brokers was perjurious.” These allegations do not, however, provide the detailed specificity required by Rule 9(b) as to the particular content and timing of the statements in issue and the identity of their makers, nor do they offer anything to indicate any reliance on the allegedly false testimony. See Equipment & Sys. for Indus., Inc., v. Northmeadows Constr. Co., 59 Mass.App.Ct. 931, 931-32 (2003). Count II therefore fails to state a claim on which relief may be granted.[3]
3.Count III: Malicious Defense
Count III alleges that Merrill Lynch “created false material evidence and gave false testimony in advancing such evidence,” thereby engaging in “malicious defense,” causing injury to the plaintiffs. As the plaintiffs acknowledge, Massachusetts courts have never recognized a tort of malicious defense. Nor has any other jurisdiction done so, with the sole exception of New Hampshire. See Aranson v. Schroeder, 140 N.H. 359, 365 (1995); compare Wilkinson v. Shoney’s, Inc., 269 Kan. 194, 208 (2000); Bertero v. Nat’l Gen Corp., 13 Cal.3d 43, 52 (1974); Ritter v. Ritter, 381 Ill. 549, 555 (1943).[4], [5]
The New Hampshire Court authorized the new claim over vigorous dissent. The dissenting judge pointed out that the new cause of action would tend *364 to stimulate increased litigation, to chill vigorous but meritorious defenses, and to drive a wedge between defendants and their attorneys. The dissenting judge also noted the availability of ample remedies for misconduct in the defense of litigation, including sanctions imposed by the trial judge in the underlying case, as well as criminal prosecution for perjuiy. Aranson, 140 N.H. at 371. This Court finds the reasoning of the dissent in Aranson persuasive, and predicts that our appellate courts will as well.
Massachusetts law provides ample remedies for misconduct in the defense of litigation, indeed apparently more than does New Hampshire law, as far as the Aranson decision indicates. Under G.L.c. 231, §6F, a court may award attorneys fees, costs, and interest at one hundred and fifty percent of the statutory rate, upon a finding, after conclusion of the underlying case, that a party’s defenses were “wholly insubstantial, frivolous and not advanced in good faith.” Abuses in discovery may elicit sanctions pursuant to Mass.R.Civ.P. 37. Perjury and suborning perjury may subject a party or witness to criminal prosecution, and perjury that obstructs a court in the performance of its duty may result in prosecution for criminal contempt. See Miaskiewicz v. Commonwealth, 380 Mass. 153, 157-58 (1980). More broadly, our courts have recognized the inherent power of a trial court to impose appropriate sanctions for misconduct in the context of litigation. Corsettiv. Stone, 396 Mass. 1, 26 (1985). The claim of malicious defense, like the other claims the plaintiffs seek to advance in this case, would stimulate a proliferation of litigation, with all its attendant costs, without countervailing benefit to parties or to the judicial system.
CONCLUSION AND ORDER
For the reasons stated, the Defendant’s Motion to Dismiss is ALLOWED as to all counts.

The allegations of the complaint might be read to suggest liability based on the conduct underlying the claims in Cahaly, as well as based on conduct in that litigation. At argument, the plaintiffs clarified that they do not intend such a claim, which would clearly be precluded by Mass.R.Civ.P. 12(b)(9).

Footnote 4 of the Court’s decision in Morrison is particularly pertinent here: “Allegations in the plaintiffs supplemental brief referring to ‘bad faith’ behavior exhibited by Toys during the discovery process are not before us. We see no reason, however, why appropriate channels for dealing with this alleged conduct are not adequately provided by Mass.R.Civ.P. 37(a)(4), as amended, 417 Mass. 1401 (1994); Mass.R.Civ.P. 37(c), 365 Mass. 797 (1974); and G.L.c. 231, §6F.”

this conclusion makes it unnecessary to address the more fundamental question of whether perjury in the context of litigation could ever give rise to a fraud claim. The only authority either side has identified on that question is a decision of the Appellate Division of the District Court holding that it cannot. Reznik v. Friswell 2003 Mass.App.Div. 89, 91 (2003). This Court finds the reasoning of that decision persuasive.

The plaintiffs cite Cisson v. Pickens, 258 S.C. 37, 43-44 (1972), as “impliedly” recognizing a cause of action for malicious defense. The claim presented there was malicious prosecution, based on the defendant’s conduct in intervening as a defendant in earlier litigation, asserting a defense, and appealing from its dismissal as a party. The Court affirmed summary judgment in favor of the defendant, observing that, "(wjhile it would appear that an action for malicious prosecution may be predicated on the interposition of a defense by a defendant, where the other conditions of an action for malicious prosecution are met . . . the record here conclusively shows that the essential elements of an action for malicious prosecution are not present” (internal citation omitted). Nothing before the Court indicates that South Carolina has recognized the proposed tort in any subsequent decision.

It is noteworthy that the New Hampshire Court limited the claim to parties who have already prevailed in the underlying litigation. Aranson, 140 N.H. at 368. Thus, even under the New Hampshire rule, this action would have to be dismissed for failure to state a claim, since the underlying litigation remains pending.