PETER D. ENRICH *vs.* WINDMERE CORPORATION.

Middlesex. May 3, 1993. - August 6, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Negligence*, Manufacturer, Fire, Res ipsa loquitur. *Warranty.*

At the trial of an action to recover damages sustained as a result of a fire
   allegedly caused by an electric cooling fan, the judge appropriately di-
   rected a verdict for the defendant, where there was complete failure of
   proof that the defendant had designed or manufactured the fan and
   where, although the jury would have been warranted in finding that the
   defendant had been the exclusive distributor, there was no evidence of
   knowledge attributable to the defendant regarding any potential defects
   in the fan. [85-87]
At the trial of a negligence claim, the evidence was insufficient to warrant
   a finding that a fire was caused by a defect in a certain electric cooling
   fan or that, if such a defect existed, it was present when the fan was
   sold to the plaintiff [87-88]; moreover, the principle of res ipsa loquitur
   was not applicable since neither expert evidence nor common knowl-
   edge would have warranted a jury in finding that the mere occurrence
   of the accident showed negligence as a cause [88-89].
The plaintiff in a civil action failed to prove a claim of breach of warranty
   arising from alleged defects in an electric cooling fan. [89]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 30, 1989.

The case was tried before *Thomas E. Connolly*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Thomas J. Iovieno* (*Rachel H. Prindle* with him) for the
plaintiff.

*Gerald F. Blair* for the defendant.

LYNCH, J. The plaintiff, Peter D. Enrich, brought this
product liability action for property damage sustained as a
result of a fire he alleged was caused by an electric cooling

fan distributed by the defendant, Windmere Corporation.[1] The plaintiff asserted claims for negligence, breach of warranty, and violation of G. L. c. 93A (1992 ed.). Trial commenced before a jury in the Superior Court on the liability issues. The defendant moved for a directed verdict after the plaintiff's opening statement, at the close of the plaintiff's case, and at the close of all the evidence. While recognizing that generally cases should be submitted to the jury for their decision rather than allowing a motion for a directed verdict, *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976), the judge granted the defendant's motion at the close of all the evidence on liability because he thought that to proceed with the more complicated damages phase of the trial was not a prudent use of judicial resources when he would ultimately rule in favor of the defendant. The plaintiff appealed the directed verdict; the Appeals Court reversed and remanded the case to the Superior Court for further proceedings.[2] *Enrich* v. *Windmere Corp.*, 33 Mass. App. Ct. 1118 (1992). We granted the defendant's application for further appellate review. We affirm the decision of the Superior Court judge.

When reviewing a defendant's motion for directed verdict, we review the evidence in the light most favorable to the

---

[1]The plaintiff had also named as a defendant PDL Industries, Australia, Pty. Ltd. (PDL). The parties agreed to a stipulation dismissing, without prejudice, PDL as a party defendant and dismissing Windmere's cross-claim against PDL.

[2]In his appeal, the plaintiff also claimed error in the judge's sanitization of the fire officials' report. In an unpublished memorandum pursuant to its rule 1:28, the Appeals Court ruled that it was within the judge's discretion to exclude certain statements by the fire officials in the report because the officials were not experts regarding the defects in fans and their opinions should therefore not be permitted. The Appeals Court ruled that the judge could determine whether the slight probative value of the opinions outweighed the potential prejudicial effect. We agree. See *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980) (investigating officer's opinions in report inadmissible); *Middlesex Supply, Inc.* v. *Martin & Sons*, 354 Mass. 373 (1968) (report of assistant fire chief regarding cause of fire held to be opinion only and inadmissible); *Cawley* v. *Northern Waste Co.*, 239 Mass. 540, 545 (1921) (entry by fire chief pertaining to cause of fire properly excluded).

plaintiff. See *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978); *Chase* v. *Roy*, 363 Mass. 402, 404 (1973). There was evidence that, in 1987, the plaintiff sustained property damage from a fire in the family room of his house. A friend of the plaintiff was "housesitting" at. the time of the fire. She testified that she turned on the fan, which was located on a windowsill of the family room, and went upstairs. Subsequently, she heard scratching sounds, went downstairs to investigate, and saw the window with the fan engulfed in flames. Fire officials testified that the fire was caused by the fan.[3] They further testified that they did not test the house wiring, fuse box, or any other electrical devices in the room where the fire began.

The plaintiff testified that his wife purchased the fan in 1985, and that, when he removed the fan from the box, it looked "brand new, clean, and fresh." He also testified that he never repaired or altered the fan. Literature accompanying the fan when it was purchased contained the legend "Gyro Aire by Mistral-Windmere" and identified Windmere Products as the distributor of the fan.

1. *Liability as a manufacturer.* The plaintiff contends that evidence was sufficient to permit the inference that the defendant was the manufacturer of the fan. The only evidence bearing on this allegation was derived from the instruction and warranty booklet containing the legend "Gyro Aire by Mistral-Windmere." There was no evidence: identifying the entity "Mistral-Windmere"; explaining the connection, if any, between the entity "Mistral-Windmere" and the defendant; or that the defendant's name was on the subject fan. See *Smith* v. *Ariens Co.*, 375 Mass. 620, 621-623 (1978) (decal on machine sufficient to identify defendant as manufacturer); *Fahey* v. *Rockwell Graphic Sys., Inc.*, 20 Mass. App. Ct. 642, 650-651 (1985) (machine manufactured, designed, labeled, and extolled in literature as a "Miehle-Roland" press; Miehle was a division of and "the same as" de-

---

[3]One of the officials testified that the remains of the fan on the windowsill were metal, while the plaintiff described the fan as plastic.

fendant). There was no evidence that the plaintiff purchased the product in reliance on the defendant's name, see *Hamson* v. *Standard Grocery Co.*, 328 Mass. 263, 264-265 (1952), or that the defendant had any involvement in the manufacture of the fan, see *Fallstrom* v. *Brady Elec. Co.*, 347 Mass. 600, 607 (1964). In fact, the defendant denied designing or manufacturing Gyro Aire cooling fans.

There exists a complete failure of proof, therefore, on the relationship between the defendant and "Mistral-Windmere." This case is two steps removed from decisions permitting the inference to be drawn that the defendant was the manufacturer where its name appeared on the product in question. Here a name similar, but not identical, appeared not on the product itself, but in an accompanying brochure that otherwise identified the defendant as the distributor of the product. The defendant is alleged to have a place of business in Florida. No allegation or evidence sheds any light on the entity "Mistral-Windmere" or its connection with the defendant. The evidence is insufficient to support the inference that the defendant manufactured the fan.

There was evidence that the defendant was the exclusive distributor of the Gyro Aire fan up until 1984, continuing to distribute the fans through 1985; and deposition excerpts by the defendant's executive vice president, Arnold Thaler, stating that the Windmere name appeared on gift cartons, instruction booklets, and warranties along with the Mistral name. The evidence would warrant the conclusion only that the defendant was the distributor of the fan. A seller of a product manufactured by another is not liable in an action for negligence unless it knew or had reason to know of the dangerous condition that caused the accident. See *Fernandes* v. *Union Bookbinding Co.*, 400 Mass. 27, 32-33 (1987); *Mc-Cabe* v. *Boston Consol. Gas Co.*, 314 Mass. 493, 495 (1943); Restatement (Second) of Torts § 404 (1965); 2A Frumer & Friedman, Products Liability § 6.01 [2] [a] (1960 & Supp. 1988). No evidence was presented at trial regarding any defects in the fan or any knowledge attributable to the defendant regarding potential defects in the fan. In fact, the plain-

tiff conceded that there was no evidence of any defect at the time of purchase and described the fan's appearance when first removed from the box as "brand new, clean and fresh."

2. *Evidence of negligence.* Even if the evidence warranted the finding that the defendant was the manufacturer, the plaintiff could not recover. The evidence did warrant the conclusion that the fan was the source of the fire, but there was no evidence that some defect in the fan caused the fire or that, if such a defect existed, it was present at the time the fan was sold. The presence of such a defect cannot be inferred in the absence of expert testimony. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 708 (1991); *Triangle Dress, Inc.* v. *Bay State Serv., Inc.*, 356 Mass. 440, 441 (1969). The opinion of the nonexperts who testified at trial cannot substitute for this absence of expert testimony. Compare *Collins* v. *Sears, Roebuck & Co.*, 31 Mass. App. Ct. 961, 961-962 (1992) (two experts testified that probable cause of fire was directly related to electrical system within dryer). Lacking expert testimony, other possible causes of the fire were not sufficiently eliminated.

While a plaintiff need not show the exact cause of the accident or exclude all other possible causes, he must show that there is a greater probability than not that the accident resulted from the defendant's negligence. *McCabe* v. *Boston Consol. Gas Co.*, *supra* at 496. This the plaintiff has failed to achieve. The jury would not be warranted in finding that it was more probable that the fire occurred because of a defect or malfunction in the fan instead of some other cause for which the defendant is not responsible. A verdict for the plaintiff here would, therefore, be based on speculation and conjecture. See *Fallstrom* v. *Brady Elec. Co.*, *supra* at 607; *Stewart* v. *Worcester Gas Light Co.*, 341 Mass. 425, 435 (1960); *McCabe* v. *Boston Consol. Gas Co.*, *supra.*

The plaintiff maintains that the fan was negligently manufactured and designed because an alleged automatic shut-off mechanism malfunctioned, preventing the fan from shutting off on the day of the fire. The plaintiff asserts that the operating instructions discuss an over temperature protection

mechanism and that, when questioned whether theoretically the fan would shut off automatically, vice president Thaler responded affirmatively. The plaintiff claims this warrants the conclusion by the jury that the fan was defectively manufactured and designed. However, wholly lacking is any testimony that the fan overheated or that the automatic shut-off mechanism failed. Also lacking is any expert testimony on the design, workings, or components of the fan.

Furthermore, since, as we demonstrate in part 4, there is no basis for recovery based on breach of warranty of merchantability, the defendant could not have been found to have been negligent. *Hayes* v. *Ariens Co.*, 391 Mass. 407, 410 (1984).

3. *Res ipsa loquitur.* Res ipsa loquitur does not overcome the lack of evidence of the defendant's negligence. This doctrine permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff are sufficiently eliminated by the evidence. See Restatement (Second) of Torts § 328D (1) (a) (1965); *Rafferty* v. *Hull Brewing Co.*, 350 Mass. 359, 362 (1966); *Ginsberg* v. *Metropolitan Transit Auth.*, 333 Mass. 514, 516 (1956); 1A Frumer & Friedman, Products Liability § 2.26 [3], at 2-1553 (1960 & Supp. 1988). The jury must be able to find, either by expert evidence or by their own common knowledge, that the mere occurrence of the accident shows negligence as a cause. See *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230, 235 (1975); *Ginsberg* v. *Metropolitan Transit Auth.*, *supra*; *Roscigno* v. *Colonial Beacon Oil Co.*, 294 Mass. 234, 235 (1936). In a closely analogous decision this court declined to apply res ipsa loquitur where an air conditioner burst into flames several hours after having been repaired by the defendant's employee. *Triangle Dress, Inc.* v. *Bay State Serv., Inc.*, *supra* at 446. What was said there, *id.* at 441-442, is equally appropriate here:

"No evidence of what the repairman did to the air conditioner was introduced, nor was there any indication of what had originally caused the machine to malfunction. There was no direct evidence of the cause of the flames. There was not only a complete absence of expert opinion testimony but it seems to us a lack of evidence establishing facts upon which an expert opinion could be predicated. The jury were thus left 'to conjecture and surmise' about the cause of the fire, 'without adequately founded . . . essential expert guidance.' *Stewart* v. *Worcester Gas Light Co.* 341 Mass. 425, 435 [1960]. *Kenney* v. *Sears, Roebuck & Co.* 355 Mass. 604, 608 [1969]. *Dolan* v. *Suffolk Franklin Sav. Bank*, 355 Mass. 665, 669-670 [1969]. The cause of the fire was not susceptible of determination by the jury's 'general knowledge of practical affairs.' Cf. *Toppin* v. *Buzzards Bay Gas Co.* 348 Mass. 397, 401 [1965]. It follows that the defendant's motion for a directed verdict should have been allowed."

4. *Breach of warranty.* The plaintiff contends that there is enough evidence to support a reasonable inference in his favor on the negligence claim, and therefore, as a matter of law, there is sufficient evidence to support the breach of warranty claim. To impose liability on the defendant, the plaintiff would need to prove a defect in the product or an unreasonably dangerous condition which existed at the time the product left the defendant's control. See *Colter* v. *Barber-Greene Co.*, 403 Mass. 50, 62 (1988); *Fernandes* v. *Union Bookbinding Co.*, *supra* at 37; *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1984). As stated above, neither factor exists here.

*Judgment of the Superior Court affirmed.*