Fecteau, J.
INTRODUCTION
Plaintiff Shirley Ford (“Ford”) filed this action against the Town of Webster (“the town”) on behalf of her son, Timothy Daniel Quill (“Quill”), a minor, who was bitten by a cat and had to undergo a series of rabies shots. Ford alleges that the town is liable for her son’s injuries (i.e., having to sustain painful rabies shots) under the Massachusetts Tort Claims Act (“MTCA”), G.L.c. 258, because the town negligently allowed the cat to escape from the town’s custody, which resulted in Quill having to receive rabies treatment (Count I). Ford also alleges a loss of her son’s consortium (Count II), and that she sustained emotional distress as a result of her son’s injuries (Count III). Defendant now moves for summary judgment on all counts. For the reasons discussed below, the defendant’s motion is allowed.
BACKGROUND
The material undisputed facts, as taken from the summary judgment record and as viewed in the light most favorable to the plaintiff, are as follows. On March 3, 1995, Quill was playing in his backyard in Webster, Massachusetts when he was bitten by a stray cat. (See Ford Aff., par. 1.) Quill’s mother, Ford, captured the cat, and detained it. (See id., par. 2.) Ford then contacted the Town of Webster Animal Control Office, which instructed Ford to call the police to have them retrieve the cat. (See id., par. 3.) The Animal Control Office also instructed Ford to take her son to the hospital, as two rabid raccoons were recently killed in her neighborhood. (See id.)
Ford then contacted the Webster Police Department. (See id., par. 4.) Shortly thereafter, Officer James Young (“Young"), of the Webster Police Department, arrived at Ford’s home to retrieve the cat. (See Young Aff., pars. 2-3.) Young retrieved the cat, and transported it to the Webster Animal Control Office. (See id., pars. 3-4.)
Upon arrival to the Animal Control Office, the cat was removed by Young from the police cruiser and placed in a cage that Jack Oosting, the Assistant Animal Control Officer, had brought out from the office. (See id., par. 4.) After the cat was placed in the cage, Young noticed that he had a white, foamy sub *164 stance on his sleeve. (See Webster Police Department Incident Report, at 2.)
The latch on the cage door was not locking properly. (See Mark S. Stankiewicz, Town Administrator of Webster’s Report [hereinafter ‘Town’s Report”].) As a result, the cat pushed open the cage door, and escaped. (See Town’s Report; Defendant’s Answer to Interrogatory No. 12; Young Aff., par. 4.) The cat was not recovered, and escaped prior to being tested for rabies. (See Young Aff., par. 6; Ford Aff., par. 6.) Quill was taken to hospital, where he underwent a series of shots as treatment for rabies. (See Ford Aff., par. 6.)
DISCUSSION
The court may grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entities the moving parly to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes., 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Counts I & II— The Massachusetts Torts Claims Act
The Massachusetts Tort Claims Act (“MTCA”), G.L.c. 258, permits a party to sue a public employer for damages resulting from the negligent acts of its employees. See G.L.c. 258, §2 (1988 ed.). In Counts I and II,[3] Ford alleges that the town is liable for her son’s injuries as well as his medical and hospital expenses under the MTCA for negligently allowing the cat to escape from the town’s custody, which resulted in Quill having to receive a series of painful rabies shots. (See Complaint, pars. 1-9.)
The town argues these claims fall as a matter of law because it is immune from liability under the MTCA, G.L.c. 258, §10(j) (1998 ed.), which provides, in pertinent part, that a town is immune from liabiliiy for “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer or any other person acting on behalf of the public employer.” According to the town, it is immune from liability under this provision because it did not originally cause the situation (the loose rabid cat), which resulted in Quill being bitten and having to sustain rabies treatment. In response, Ford argues, for various reasons,[4] that c. 258, §10(i) does not apply to the facts of this case. However, whether §10(j) applies is immaterial because Ford’s negligence claim under the MTCA fails for lack of proof of causation.
In order to establish a claim for negligence, Ford must show, by a preponderance of the evidence, see Williams v. United Men’s Shop, Inc., 317 Mass. 319, 321 (1944), that the town owed Quill a duty, that the town breached that duty, and that this breach was the proximate cause of Quill’s injuries. See Dinsky v. Framingham, 386 Mass. 801, 804 (1982). The plaintiff “must show that there is a greater probability than not that [his or her injuries] resulted from the defendant’s negligence." Enrich v. Windmere Corp. 416 Mass. 83, 87 (1993) (citation omitted).
Although not raised by the town in its brief, the issue was raised at oral argument as to whether Ford has a reasonable expectation of proving the essential element of causation. Ford asserts that the town caused Quill’s injuries because the cat escaped before it was tested for rabies, and, as a consequence, Quill had to sustain rabies treatment. However, if the cat had been rabid, Quill would have had to undergo the rabies treatment anyway. Part of the plaintiffs burden on causation, therefore, is showing that the cat was not rabid.
When this issue was presented to plaintiff at oral argument, plaintiff was unable to point to any evidence showing that the cat was not rabid because the cat was never recovered. In fact, the evidence within the summary judgment record supports the inference that the cat was rabid (i.e., a white, foamy substance was on Officer Young’s sleeve after placing the cat in the cage). Consequently, Ford has no reasonable likelihood of proving that it is more likely than not that the town’s negligence caused Quill’s injuries.
Accordingly, summary judgment shall be entered for the town on Count I. Summary judgment shall also be entered on Count II to the extent that it alleges liability for Quill’s medical and hospital expenses.
II. Count II — Loss of Consortium
In Count II, Ford also alleges a claim for loss of her son’s consortium. (See Complaint, pars. 7-9.) A claim for loss of a child’s consortium requires proof that the defendant caused the child’s personal injuries. See Sena v. Commonwealth, 417 Mass. 250, 264 (1994); G.L.c. 231, §85X (1998 ed.). Because Ford’s negligence action against the town fails, her loss of consortium claim must also fail. Accordingly, summary judgment shall be entered for the town on Count II.
*165 III. Count III — Negligent Infliction of Emotional Distress
In Count III, Ford alleges that, as a result of the town’s negligence in causing Quill’s injuries, she sustained physical and mental injuries. (See Complaint, pars. 10-11.) A parent establishes a claim for negligent infliction of emotional distress when he or she shows “substantial physical harm as a result of severe emotional distress over some peril or harm to [the parent’s] minor child caused by defendant’s negligence where the parent either witnesses the accidenté” Dziokonski v. Babineau, 375 Mass. 555, 568 (1978) (emphasis added), or sees his or her injured child “closely on the heels of the acci-denté” Stockdale v. Bird & Son, Inc., 399 Mass. 249, 251 (1987) (quoting Ferriter v. Daniel O’Connell’s Sons, Inc., 381 Mass. 507, 518 (1980)). As discussed above, Ford cannot prove that the town caused Quill's injuries. Consequently, Ford’s emotional distress claim also fails as a matter of law. Accordingly, summaryjudgment shall be entered for the town on Count III.
ORDER
For the reasons discussed above, it is hereby ORDERED that the defendant’s motion for summary judgment on Counts I, II and III be ALLOWED.

 Count II also contains a claim for Ford’s loss other son’s consortium, which will be addressed later. See infra, at 7.

 Ford argues that §10(jj does not apply to this case for three reasons. First, Ford asserts that the town’s negligence in letting the cat escape was the original cause of Quill’s injuries (sustaining a series of rabies shots), and, as such, §10(j) does not apply. Second, Ford argues that two exceptions to §10(j) apply to this case: §§10(j)(2) and (3). Section 10(j)(2) provides that the exclusion shall not apply to “any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was before the intervention!.]” Section 10(j)(3) provides that the exclusion shall not apply to “any claim based on negligent maintenance of public property!.]” Whether §10(j) applies or not, however, is immaterial because Ford’s negligence claim under the MTCA fails for lack of proof of causation. See infra, at 6-7.
Third, Ford attempts to add a new theory of liability to her claim by asserting that the town is liable for Quill’s injuries under the MTCA because the town failed to warn residents about rabid animals in the area. This theory of liability (failure to warn) is not alleged within Ford’s complaint, but is raised for the first time in response to the town’s motion for summary judgment. The proper procedure for adding this theory of liability to Ford’s claim would have been to move to amend her complaint. See Mass.R.Civ.P. 15.
However, even if Ford had successfully moved to add this failure-to-wam theory of liability to her complaint, this theory would fail as a matter of law. Liability based on the town’s failure to warn of rabid animals falls squarely within §10(j) because the town’s employees were not involved in creating the risk (the loose rabid cat) which caused Quill’s injury. See Joseph W. Glannon, Liability for “Public Duties” Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass.L.Rev. 17, 26 (1994) (providing that a town would be immune from liability under § 10(j) for a child’s rabid raccoon bite when the town failed to intervene in a timely manner after learning that a rabid raccoon was running loose through the town, because the “situation” which injured the child was the rabid raccoon).