**ONE BEACON INSURANCE COMPA-NY, Commerce Insurance Company, Kathleen Ciccone Donovan and Lynn Turgeon, Plaintiffs,**

v.

**ELECTROLUX and Sears Roebuck and Co., Defendants.**

Civil Action No. 03–12232–MBB.

United States District Court, D. Massachusetts.

June 30, 2006.

292

Gareth W. Notis, Morrison, Mahoney, & Miller LLP, Boston, MA, for Commerce Ins. Co., One Beacon Ins. Co.

Joseph D. Regan, Kelly R. Spencer, Lisa J. Gurecki, Regan & Spencer, LLP, Lowell, MA, for Electrolux, Sears, Roebuck & Co.

Allen E. Levin, David C. Levin, Levin & Levin, LLP, Quincy, MA, for Edward C. Roman.

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS OF PLAINTIFFS' COMPLAINT *(DOCKET ENTRY # 73)*

BOWLER, United States Magistrate Judge.

Pending before this court is a motion for summary judgment filed by defendants Electrolux and Sears RoeBuck and Company ("Sears") (collectively: "defendants") on all counts of the amended complaint. (Docket Entry # 73). The amended complaint,[1] filed November 13, 2003, by plain-

---

1. The amended complaint of plaintiffs Kathleen Ciccone Donovan and Lynn Turgeon misnumbers the counts of the complaint. Therefore, this court will reference the counts

tiffs One Beacon Insurance Company ("One Beacon"), Commerce Insurance Company ("Commerce"), Kathleen Ciccone Donovan ("Donovan") and Lynn Turgeon ("Turgeon") (collectively: "plaintiffs") alleges negligent manufacture and design, breach of warranty of merchantability and fitness and violation of Massachusetts General Laws chapter 93A, sections two and nine ("chapter 93A"), by Electrolux. It also alleges negligent repair, breach of warranty of merchantability and fitness, breach of contract and violation of chapter 93A by Sears.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Seaboard Surety Co. v. Town of Greenfield,* 370 F.3d 215, 218 (1st Cir.2004). A factual issue is "genuine" where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party." *Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996). A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law." *Id.*

The burden initially rests with the party seeking summary judgment to demonstrate that "no genuine issue of material fact exists." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st

Cir.1995). The party opposing summary judgment "may not rest upon the mere allegations or denials of the ... party's pleading." Fed.R.Civ.P. 56(e). The non-movant, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Triangle Trading Co. v. Robroy Ind., Inc.,* 200 F.3d 1, 2 (1st Cir.1999). Factual disputes are resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995).

## FACTUAL BACKGROUND [2]

On or about March 4, 2000, Frank Spinazzola ("Spinazzola"), a washer and dryer technician for Sears, serviced a dryer (hereinafter: "incident dryer") at a two story duplex at 72 to 74 Jarvis Circle in Needham, Massachusetts (hereinafter: "the property"). (Docket Entry # 81, Ex. G; Docket Entry # 81, Ex. H, p. 28; Docket Entry # 81, Ex. D, p. 1). The incident dryer was an Electrolux dryer distributed under the name Frigidaire with a model number of MDE216RBW1. (Docket Entry # 81, Ex. A, No. 12). The incident dryer belonged to Alan and Kathleen Ciccone,[3] (collectively: "the Ciccones") who resided on the second floor of 74 Jarvis Circle. (Docket Entry # 81, Ex. A, No. 4; Docket Entry # 81, Ex. D, p. 2). Turgeon resided on the first floor of the same building. The Ciccones purchased the incident dryer at "Lechmere's" approximately five years prior to the date Spinaz-

not by the numbers but instead by the substantive allegations set forth by all the plaintiffs. (Docket Entry # 40, Ex. C).

**2.** This court fully reviewed the disputed expert testimony. Such testimony is set forth in the discussion section.

**3.** Kathleen Ciccone Donovan f/k/a Kathleen Ciccone was married to Alan Ciccone but has since obtained a divorce.

zola serviced it on March 4, 2000. (Docket Entry # 74, Ex. 2, p. 4).

On November 1, 2000, Alan Ciccone placed a load of laundry in the incident dryer, located in the basement, sometime between 12:30 p.m. and 12:45 p.m. (Docket Entry # 81, Ex. D, p. 2). He proceeded back upstairs to his second floor apartment and "took a nap." *Id.* He woke up a short time later noticing smoke coming from the basement. *Id.* John F. Whalen ("Whalen"), Deputy Fire Chief for the Town of Needham, and various members of the Needham Fire Department responded and quickly extinguished the fire at the property. (Docket Entry # 81, Ex. C, p. 10). Whalen later filed a report indicating the origin of the fire at the property as the laundry area in the basement. (Docket Entry # 81, Ex. C, p. 14; Docket Entry # 81, Ex. B, p. 2).

Prior to the time of the incident, residents at the property experienced problems with the electrical system. Problems included a broken switch resulting in a loss of power to Turgeon's dryer, blown fuses rendering the incident dryer inoperative and reports of lights on the second floor dimming during the summer. (Docket Entry # 81, Ex. D, p. 1). In addition, the electrical service to the building at the property was only 60 amps. (Docket Entry # 81, Ex. E, p. 60).

On the date of the incident, after the Needham Fire Department extinguished the fire, fire investigator Donald B. Ingram ("Ingram"), a member of the Needham Fire Department, was dispatched to ascertain the cause of the fire. (Docket Entry # 81, Ex. B, p. 5; Docket Entry # 81, Ex. C, pp. 12 & 13). Ingram observed a V shaped burn area at the location of the incident dryer. (Docket Entry # 81, Ex. C, p. 42). Upon further inspection, he observed that the vent pipe on the incident dryer was melted, the back of the incident dryer was burnt and there were burnt lint and burnt clothes inside the incident dryer. (Docket Entry # 81, Ex. C, p. 25; Docket Entry # 81, Ex. C, p. 34). Ingram ruled out arson and the use of accelerant. (Docket Entry # 81, Ex. C, pp. 28 & 29). He also ruled out the possibility of an electrical malfunction in the building as the cause and origin of the fire. (Docket Entry # 81, Ex. C, pp. 30 & 31). Based on his observations, Ingram concluded that the location and origin of the fire was the incident dryer. (Docket Entry # 81, Ex. C, pp. 24 & 38).

The incident dryer has since been disassembled and tested to ascertain the source of any malfunctions. (Docket Entry # 81, Ex. E, p. 11). Parts of the incident dryer, including the drive belt and the centrifugal switch module, which were removed during the tests, are missing. (Docket Entry # 81, Ex. E, p. 81; Docket Entry # 81, Ex. E, pp. 111 & 112).

## DISCUSSION

This court addresses the various claims separately with respect to each defendant. In addition to the claims alleged by plaintiffs in the amended complaint, defendants challenge the qualifications of plaintiffs' expert, an issue which is addressed *infra.* Finally, inasmuch as this case is based on diversity, Massachusetts law applies to all substantive issues. *B&T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co.,* 382 F.3d 36, 38 (1st Cir.2004).

## I. ELECTROLUX

### A. Negligent Manufacture and Design

A cause of action for negligence generally requires plaintiffs to establish the existence of a duty, a breach of that duty, causation (both cause in fact and proximate) and an injury compensable by damages. *Restatement (Second) of Torts*

§ 328A (1965); *Coughlin v. Titus & Bean Graphics, Inc.,* 54 Mass.App.Ct. 633, 767 N.E.2d 106, 110–111 (Mass.2002). Focusing on the conduct of the defendant, liability exists "when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of harm." *Colter v. Barber–Greene Co.,* 403 Mass. 50, 525 N.E.2d 1305, 1312 (1988).

■ "A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." *Wasylow v. Glock, Inc.,* 975 F.Supp. 370, 377 (D.Mass. 1996) (interpreting *Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964, 969 (1978)). In order to prevail on a claim for negligent design, plaintiffs have to show that the entire product line is defective, not simply their individual unit. *See Restatement (Second) of Torts* § 398 (1965).

> Thus, the essence of this theory is that all products of a particular type are defective when they leave the manufacturer. To show that a defect is attributable to a manufacturer in a design defect action, therefore, the plaintiff must show that the defect existed at the time the product left the manufacturer.

*Smith v. Ariens Co.,* 375 Mass. 620, 377 N.E.2d 954, 958 (1978).

■ In the instant case, the absence of the physical evidence, i.e., the missing parts of the incident dryer, necessitates a reliance on the expert testimony. Moreover, "the presence of such a defect cannot be inferred in the absence of expert testimony." *Enrich v. Windmere Corp.,* 416 Mass. 83, 616 N.E.2d 1081, 1084 (1993). Plaintiffs' and defendants' experts disagree about the cause and origin of the fire. Richard Fain ("Fain"), plaintiffs' expert, observed that the motor was loose from its proper position, although he did not know whether this was due to the fire or an inherent manufacturing defect. (Docket Entry # 81, Ex. E, pp. 81–83). Fain also opined that the failure of the centrifugal switch module with the associated electrical shorting and burning was the cause of the fire. (Docket Entry # 81, Ex. E, p. 110). Beginning at the site of the centrifugal switch module, the fire then spread to the rest of the dryer through the lint vent, according to Fain. (Docket Entry # 81, Ex. E, p. 120).

In contrast, Fred Pauk ("Pauk"), defendants' expert, observed soot on the inside of the incident dryer instead of a clean burn thereby indicating to him that the fire started outside of the incident dryer. (Docket Entry # 81, Ex. I, pp. 42, 77–78). He further opined that electrical problems from the drop cord, outside of the incident dryer, were just as likely to have started the fire. (Docket Entry # 81, Ex. I, pp. 43 & 47).

Although Electrolux points out that Fain does not know definitively that the centrifugal switch module was the exact cause of the fire, exact certainty is not required. (Docket Entry # 81, Ex. E, pp. 111 & 132). "A plaintiff need not prove the exact cause of the accident or disprove every possible cause, but he must show that there is a greater likelihood that the accident resulted from the defendant's negligence than that it did not." *Hayes v. Douglas Dynamics,* 8 F.3d 88, 90 (1st Cir.1993). Fain's opinion meets this showing.

Accordingly, in light of the lack of physical evidence and the differing expert testimony, a genuine issue of material fact makes the negligence claim inappropriate for summary judgment.

B. *Breach of Warranty of Merchantability and Fitness*

■ Whereas negligence focuses on the actions of the manufacturer, a claim for

breach of the warranty of merchantability focuses on the product. *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 446 N.E.2d 1033, 1039 (1983). The Massachusetts statute applicable to the implied warranty of merchantability, Massachusetts General Laws chapter 106, section 2–314, conforms to the principles of strict liability set forth in section 402A of the *Restatement (Second) of Torts* (1965). *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964, 969 (1978). In other words, a breach of warranty claim in Massachusetts "is basically the same as strict liability theory in tort." *Hayes*, 8 F.3d at 89 n. 1.

■ As stated in the statute, the warranty of merchantability provides that goods must be "fit for the ordinary purposes for which such goods are used." Mass. Gen. L. ch. 106, § 2–314. "A breach of warranty can occur if either (1) the product is defectively designed, or (2) foreseeable users are not adequately warned of the dangers associated with its use." *Kearney v. Philip Morris, Inc.*, 916 F.Supp. 61, 64 (D.Mass.1996). Therefore, plaintiffs must show that the incident dryer was more likely than not the cause in fact and the proximate cause of any damages. *Id.* at 64 & 69.

The warranty of fitness for a particular purpose is similar to the warranty of merchantability but is more narrowly applied. *Wasylow v. Glock, Inc.*, 975 F.Supp. 370, 377 (D.Mass.1996). Thus, the warranty of fitness for a particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business." Mass. Gen. L. ch. 106, § 2–315, cmt. 2.[4]

■ Plaintiffs' and defendants' experts disagree about the existence of an inherent defect in the manufacture or design of the incident dryer. Fain opines that the fire originated with the failure of the centrifugal switch module. (Docket Entry # 81, Ex. E, p. 110). To further bolster the opinion that the fire started inside the incident dryer, Fain points to the lubrication on the inside of the bearing housing being consumed and leaving a residue. (Docket Entry # 81, Ex. E, p. 106). In his opinion, this type of consumption and residue are the result of a fire inside the incident dryer. *Id.* Pauk, however, observed soot on the inside of the incident dryer, indicating to him that the fire started outside of the incident dryer since an inside fire would leave a clean burn. (Docket Entry # 81, Ex. I, pp. 42, 77 & 78). Since plaintiffs need only prove that the design or manufacture was not "fit" for ordinary or the particular usage, making the dryer "unreasonably dangerous," a jury could infer that but for a defect in the incident dryer, the dryer would not catch on fire. *See Colter*, 525 N.E.2d at 1313–1314.

Accordingly, the existence of genuine issues of material fact precludes summary judgment for Electrolux on the claims for breach of warranty of merchantability and fitness for a particular purpose.

## C. *Chapter 93A*

■ Chapter 93A prescribes unfair or deceptive acts or practices. Mass. Gen. L. ch. 93A, § 2. It is well established that with respect to a chapter 93A claim under section nine, a defendant violates chapter 93A if the defendant breached the warranty of merchantability. *Glyptal, Inc. v. Engelhard Corp.*, 801 F.Supp. 887, 899 (D.Mass.1992); *see also Maillet v. ATF–Davidson Co., Inc.*, 407 Mass. 185, 552 N.E.2d 95, 100 (1990); *see generally Han-*

---

**4.** For example, shoes are generally used for the purpose of walking upon ordinary ground but a seller may know that a particular pair was selected to be used for climbing mountains. Mass. Gen. L. ch. 106, § 2–315, cmt. 2.

*non v. Original Gunite Aquatech Pools, Inc.,* 385 Mass. 813, 434 N.E.2d 611, 616 (1982).

In the present case, the chapter 93A violation depends upon a jury finding a breach of warranty by Electrolux. Inasmuch as summary judgment is inappropriate under the breach of warranty claim by Electrolux, summary judgment is likewise inappropriate under the chapter 93A claim. *Glyptal,* 801 F.Supp. at 899 (inasmuch as the plaintiff's breach of warranty claim survived summary judgment, its chapter 93A claim survived as well).

As a final matter, Electrolux cites *Morrison* for the proposition that because Electrolux was self insured, it cannot be held in violation of chapter 93A. *Morrison v. Toys "R" Us, Inc.,* 441 Mass. 451, 806 N.E.2d 388 (2004). *Morrison* is distinguishable, however, because it involves an unfair settlement practices claim under Massachusetts General Laws chapters 176D and 93A. *Morrison* held that a self insured entity does not have the same obligations as an insurance company to fairly settle claims. *Id.* at 391. The case does not stand for the general principle that a self insured entity cannot be held liable under chapter 93A where, as here, a jury could find that the entity breached an implied warranty.

## II. *SEARS*

### A. *Negligent Repair*

Summary judgment is rarely granted in negligence cases. *Foley v. Matulewicz,* 17 Mass.App.Ct. 1004, 459 N.E.2d 1262, 1263 (Mass.1984). "Ordinarily the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury." *Zezuski v. Jenny Mfg. Co.,* 363 Mass. 324, 293 N.E.2d 875, 878 (1973).

As previously stated, in order for a plaintiff to succeed on a negligence claim, the plaintiff must satisfy the elements of duty, breach, causation and damages. *Coughlin,* 767 N.E.2d at 110–111. Plaintiffs must therefore prove that Sears breached a duty of care to plaintiffs and that this breach of duty was a substantial factor in causing the fire in the incident dryer and the subsequent damage. *Bernier v. Boston Edison Co.,* 380 Mass. 372, 403 N.E.2d 391, 400 (1980). More specifically and as alleged in the amended complaint, they must establish that a malfunction in the incident dryer caused the fire and that the resulting damage was due to negligent maintenance or repair. Sears, citing the deposition testimony of Fain, argues that plaintiffs will be unable to prove any negligence in the service, repair or installation of replacement parts by Sears that caused or contributed to their damages. (Docket Entry # 74). This court disagrees.

Whether the performance of individuals with respect to the repair or maintenance of appliances or machinery reasonably complies with proper standards of care ordinarily requires expert testimony. *Enrich,* 416 Mass. 83, 616 N.E.2d 1081, 1084 (expert testimony required to establish whether defect in fan caused fire); *Stewart v. Worcester Gas Light Co.,* 341 Mass. 425, 170 N.E.2d 330, 337 (1960) (expert testimony required to determine propriety of placement of dresser coupling in gas system installation); *see Kennedy v. U–Haul Co.,* 360 Mass. 71, 271 N.E.2d 346, 349 (1971) (expert testimony required as to cause of brake failure); *see also Atlas Tack Corp. v. Donabed,* 47 Mass.App.Ct. 221, 712 N.E.2d 617, 622 (Mass.1999) (proof of negligence in environmental cleanup activities dependent on expert evidence). Evidence that attempts were made to repair equipment and that such

equipment subsequently failed do not conclusively reveal that the repairs were negligently performed. *See Triangle Dress, Inc. v. Bay State Serv., Inc.,* 356 Mass. 440, 252 N.E.2d 889, 890–891 (1969) (finding evidence of negligence by repairman insufficient where jury left to conjecture and surmise about cause of fire). Rather, there needs to be a showing that the actions of the repairman are the cause in fact and proximate cause of the damage in order for a jury to find negligence. *Restatement (Second) of Torts* § 328A (1965).

■ Numerous portions of Spinazzola's testimony coupled with the expert testimony create factual disputes as to whether Sears' acts or omissions contributed to the fire in the incident dryer. Specifically, Spinazzola testified that if he had removed lint from the cavity of an electric dryer he would have noted that in his technician's comments. (Docket Entry # 81, Ex. H, pp. 57 & 58). Yet, he made no such note with respect to his service of the incident dryer. *Id.* More importantly, although Spinazzola was aware that metal vent pipes were preferred over plastic vent pipes, he did not replace the plastic vent pipe on the incident dryer with a metal vent pipe and did not recommend to the owner to have it replaced. (Docket Entry # 81, Ex. H, p. 59). Spinazzola testified that if he encountered a plastic vent pipe on a service call for an electric dryer, he would do "probably nothing." (Docket Entry # 81, Ex. H, p. 58).

Whalen determined that the origin of fire was a plastic vent pipe located at the rear of the dryer. (Docket Entry # 81, Ex. C, p. 24). Since Spinazzola failed to replace the plastic vent pipe with a metal pipe [5] and since Spinazzola may have also failed to remove lint from the dryer, there

is evidence to suggest that Spinazzola was negligent. Inasmuch as this evidence could lead a jury to find that Spinazzola was negligent and that such negligence was a proximate cause, summary judgment on the negligence claim is inappropriate.

### B. Breach of Warranty of Merchantability and Fitness

Turgeon is the only plaintiff bringing a claim for breach of the implied warranty of merchantability and fitness for a particular purpose against Sears. Massachusetts law regarding breach of the implied warranties of merchantability and fitness for a particular purpose set forth with respect to Electrolux in part I(B) is equally applicable to Sears and, accordingly, need not be repeated.

■ Genuine issues of material fact preclude summary judgment against Sears. Fain, plaintiffs' expert, opines that Spinazzola, by not removing lint and not replacing the plastic vent pipe with metal, contributed to the fire. (Docket Entry # 81, Ex. E, pp. 133 & 134; Docket Entry # 81, Ex. H, p. 59). In contrast, Pauk, defendants' expert, opines that Spinazzola acted properly. Pauk points to the problem free operation of the incident dryer for eight months after the repair as evidence of proper servicing. (Docket Entry # 81, Ex. I, p. 109). Such a genuine dispute with respect to the material issue of causation requires a denial of summary judgment on the breach of the implied warranty of merchantability claim.

### C. Breach of Contract

All plaintiffs except Turgeon assert breach of contract claims against Sears. Sears' brief argument for summary judg-

---

**5.** This finding alone is sufficient to deny summary judgment irrespective of the failure to remove the lint eight months prior to the fire.

ment on the breach of contract claim relies solely on the premise that "plaintiffs fail to meet their burden of proof on each and every element of their negligence claims ... thus, [plaintiffs'] breach of contract claims must fail as well." (Docket Entry # 74, p. 26). Because this court denied summary judgment on the negligence claim against Sears, however, summary judgment on the breach of contract claim is likewise denied.

In the alternative, other than the aforementioned single sentence, Sears fails to develop an argument in favor of summary judgment on the contract claim. Indeed, Sears fails to cite any supporting authority for summary judgment on the breach of contract claim. Denial of summary judgment on the contract claim is therefore appropriate. *See* LR. 7.1(b)(1).

#### D. *Chapter 93A*

As previously noted in part I(C), violation of the implied warranty of merchantability establishes a violation of section nine of chapter 93A. Inasmuch as summary judgment is inappropriate with respect to breach of the implied warranty of merchantability claim against Sears, summary judgment with respect to the chapter 93A claim is also inappropriate.

### III. *EXPERT QUALIFICATION*

As a final issue, defendants challenge the qualifications of Fain, plaintiffs' expert, as lacking the necessary knowledge, skill, training or education within the meaning of Rule 702, F.R.E. Specifically, they submit that Fain lacks the requisite qualifications with respect to the design, manufacture and assembly of residential appliances and, in particular, electrical dryers. They also point to his lack of training and certification in drum removal and belt installation. Defendants, nonetheless, acknowl-

edge that Fain is qualified to opine about the electrical causes of the fire.

*Daubert* requires a trial judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In addition, a trial judge serves as a "gatekeeper," applying *Daubert* to not only "scientific" but all expert testimony as defined by Federal Rules of Evidence 702. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). "In performing its gatekeeping function in assessing proffered expert evidence, a court must consider 'whether the putative expert is "qualified by 'knowledge, skill, experience, training, or education.' " ' " *Prado Alvarez v. R.J. Reynolds Tobacco Co.,* 405 F.3d 36, 39 (1st Cir.2005) (citing *inter alia Daubert,* 509 U.S. at 592, 113 S.Ct. 2786, and Fed.R.Evid. 702).

█ Having reviewed Fain's curriculum vitae (Docket Entry # 81, Ex. F(A)), this court finds him sufficiently qualified to render an opinion. While lacking detailed expertise in electrical dryers, Fain possesses sufficient expertise to testify regarding the design, manufacture, assembly, repair and operations of dryers. "Rule 702 is not so wooden as to demand an intimate level of familiarity with every component of a transaction or device as a prerequisite to offering expert testimony." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.,* 385 F.3d 72, 80 (1st Cir.2004) (citing *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786); *see generally DaSilva v. American Brands, Inc.,* 845 F.2d 356, 361 (1st Cir. 1988) (expert need not possess design experience with respect to specific machine to be qualified to testify about its design).

#### CONCLUSION

In accordance with the foregoing discussion, the summary judgment motion

(Docket Entry # 73) is **DENIED.** Inasmuch as the deadline to file dispositive motions has passed, the parties shall appear at a status conference on July 7 at 2:30 p.m. to set a trial date.