NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-861

GARY SAWAYER

vs.

TOWN OF BARNSTABLE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this negligence action, the plaintiff, Gary Sawayer, claims that a public works project designed and constructed by Comprehensive Environmental Inc. (CEI), and operated and maintained by the Town of Barnstable (town), caused flooding damage to his property. The defendants each moved for summary judgment on the ground that Sawayer could not prove his claims without expert testimony. A Superior Court judge allowed the motions, and Sawayer appeals. We affirm.

Background. The following facts are undisputed. At all relevant times, Sawayer owned a six-unit rental property located

---

[1] Comprehensive Environmental Inc.

on South Street in Barnstable.  In or around 2007, the town acquired abutting property on Pleasant Street as part of a downtown improvement project intended "to provide connectivity between the Hyannis Inner Harbor and the existing recreational, commercial, and open space located directly on Hyannis Harbor by way of a harbor walk extension."  To create the extension, the town demolished a residence on the Pleasant Street property and regraded the area to level the site.  Between 2008, when this project was completed, and July 2017, Sawayer did not experience any pattern of flooding on his property.

In 2014 the United States Environmental Protection Agency (EPA) selected the Pleasant Street property as one of two Cape Cod locations for construction of a stormwater best management practice (BMP) project.  The goal of the BMP project was to "demonstrate the efficacy of an innovative subsurface gravel wetland stormwater best management practice (BMP) retrofit for the control of nitrogen and improve the water quality of the Hyannis Inner Harbor."  The system was designed to "store and treat stormwater from up to a 0.3-inch rainfall event."  During a rainfall event, stormwater is collected in catch basins, carried by a twenty-four-inch diameter clay pipe to a bioretention area, and "eventually discharge[d] to Hyannis Inner

2

Harbor."  The system is also equipped with a catch basin grate, "which serves as an emergency overflow."

The EPA hired CEI, along with a second company that is not a party to this case, to design and construct the BMP project. Construction began in April 2015 and concluded in May 2015. Landscaping and installation of monitoring equipment took place in late 2015 through early 2016.  The system was then "allowed to settle for several months as the plants and vegetation took root," after which it became operational.

On July 7, 2017, a large storm struck the town and "dropped 3.10 inches of rain" in eight hours, with "[t]he bulk of the rain, i.e., 2.92 inches," falling between 1 P.M. and 4 P.M. This "one-day storm . . . accounted for [seventy-nine percent] of all rainfall in Hyannis for the month of July 2017."  During the storm, excess stormwater from South Street flooded Sawayer's property, causing damage.

In May 2019 Sawayer filed this suit, asserting separate negligence claims against the town and CEI.  In count I against the town, Sawayer claimed that the town knew or should have known that the design of the BMP system would result in flooding to his property, that the town negligently operated and maintained the system, and that the town failed to take appropriate action during the storm.  In count II against CEI,

3

Sawayer claimed that CEI negligently engineered, designed, constructed, and maintained the BMP system.

After the close of discovery, the town and CEI each moved for summary judgment, arguing in part that Sawayer's failure to designate an expert meant that he would be unable to meet his burden of proof at trial. The judge allowed the motions on this basis, and this appeal followed.

Discussion. Our review of a grant of summary judgment is de novo. See Carroll v. Select Bd. of Norwell, 493 Mass. 178, 182 (2024). "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (citation omitted). Id. Where, as here, the nonmoving party will have the burden of proof at trial, the moving party can prevail on summary judgment by showing that the nonmoving party "has no reasonable expectation of proving an essential element of that party's case" (citations omitted). Dulgarian v. Stone, 420 Mass. 843, 846 (1995). See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) (moving party's "burden need not be met by affirmative evidence negating an essential element of the plaintiff's case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial").

4

To prove a claim for negligence, a plaintiff must establish, among other elements, that the defendant breached a duty owed to the plaintiff and that "there is a greater probability than not" that the breach caused the plaintiff's injury. Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993). See Helfman v. Northeastern Univ., 485 Mass. 308, 315 (2020). If the plaintiff's claim requires resolution of issues "beyond the scope of an average person's knowledge," expert testimony is required for the case to go to a jury. Esturban v. Massachusetts Bay Transp. Auth., 68 Mass. App. Ct. 911, 911 (2007). See Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97, 103-104 (1988).

We agree with the judge that Sawayer has no reasonable expectation of proving his claims at trial without expert testimony. With respect to his claim against CEI, Sawayer would have to show that CEI breached a standard of care in designing and constructing the BMP system, an issue that is beyond the understanding of ordinary jurors. See LeBlanc v. Logan Hilton Joint Venture, 463 Mass. 316, 329 (2012) ("Expert testimony is generally needed to establish [a] professional standard of care"). In his amended complaint, Sawayer alleged that CEI did not properly calculate the amount of stormwater that would run through the BMP system and that the system had a number of

5

design defects, such as "an undersized bio-retention field," the lack of "an automatic mechanism to redivert storm water not adequately collected in the bio-retention area," and "stop logs" that "required manual opening to release excess storm water from the bio-retention field."  These allegations raise highly technical issues that ordinary jurors would not "be expected to understand . . . without guidance from an expert."  Providence & Worcester R.R. v. Chevron U.S.A. Inc., 416 Mass. 319, 323 (1993).  See Esturban, 68 Mass. App. Ct. at 911 ("dimensions essential to [an escalator's] safe operation is generally beyond the scope of an average person's knowledge" because "an escalator is a complex, technical piece of machinery, whose design and operational requirements are not straightforward"); Atlas Tack Corp. v. Donabed, 47 Mass. App. Ct. 221, 226-227 (1999) (expert testimony required to prove breach of professional engineering standards).

Furthermore, expert testimony is needed on the question of causation.  The amended complaint alleges that the cause of the flooding was the negligent design of the BMP system, the town's failure to remove grass clippings from the emergency catch basin grate and "to monitor and check for sediment backup," and the defendants' failure to "remov[e] the diversion wall stop logs prior to the storm."  Again, jurors would require the assistance

6

of an expert to understand these technical issues and determine whether it is more probable than not that the defendants' acts or failures to act, alone or in combination, caused the flooding.  See Enrich, 416 Mass. at 87.  This is especially so in light of the undisputed fact that the July 7, 2017 storm was an extraordinary rain event in both its volume and speed.  Given the sheer amount of rain that fell, "without adequately founded . . . essential, expert guidance," a jury would have to resort "to conjecture and surmise" to find that the flooding would not have occurred but for the defendants' negligence (citation omitted).  Triangle Dress, Inc. v. Bay State Serv., Inc., 356 Mass. 440, 441-442 (1969).  See Doull v. Foster, 487 Mass. 1, 7 (2021) ("An act or an omission is not regarded as a cause of an event if the particular event would have occurred without it" [citation omitted]).

Sawayer's reliance on Gillis v. Uxbridge, 103 Mass. App. Ct. 100 (2023), is misplaced.  In Gillis we reversed a grant of summary judgment for the defendant, holding that the plaintiffs did not need to present expert testimony to prove that road work performed by the defendant caused flooding to the plaintiffs' property.  See id. at 103-106.  Gillis is distinguishable from this case for two reasons, however.

7

First, Gillis was an action in nuisance, which does not require proof that the defendant breached a duty owed to the plaintiff.  See id. at 102.  As discussed above, breach of a duty is an element of a negligence claim, and Sawayer cannot prove it without an expert, at least with respect to his claim against CEI.

Second, although we concluded in Gillis that an expert was not needed on the issue of causation, we based that conclusion on evidence that "the plaintiffs' property experienced no flooding before" the road work and "regular and significant flooding" afterward, and on "the absence of evidence pointing to any other cause."  Gillis, 103 Mass. App. Ct. at 103.  Here, in contrast, Sawayer presented no evidence of a pattern of flooding:  it is undisputed that his property experienced no pattern of flooding from 2016 (when the BMP system became operational) until the July 7, 2017 storm, and there is no evidence in the record of any flooding after the storm. Moreover, the record points to another cause for the flooding -- namely, the extraordinary nature of the storm itself.  See id. at 103 n.4 (noting that had there been "other explanations for the flooding, including unusually heavy rain events during the period in question, and absent during the prior period," plaintiffs might not have survived summary judgment).  Unlike in

8

Gillis, therefore, a lay jury could not find, "without resort to speculation, that the [BMP project] caused the flooding to occur." Id. at 103.

For these reasons, without testimony from an expert, Sawyer has no reasonable expectation of proving his claims at trial. Summary judgment for the defendants was thus properly granted.[2]

Judgment affirmed.

By the Court (Meade, Shin & Tan, JJ.[3]),

Clerk

Entered: June 24, 2025.

---

[2] Given our conclusion, we need not address the town's alternative argument that it is immune from suit under exceptions set out in the Massachusetts Tort Claims Act.

[3] The panelists are listed in order of seniority.